*493 OPINION OF THE COURT
Paul J. Baisley, Jr., J.
Petitioners, three bar/restaurants located in Suffolk County, New York, commenced this CPLR article 78 proceeding, by order to show cause dated March 8, 2004, for the following relief: (i) judicial review of respondent’s findings of fact, decisions and orders dated January 13, 2004 which found each of the petitioners guilty of violating Public Health Law § 1399-o; (ii) upon such review, vacating and annulling respondent’s decision and order dated January 13, 2004; and (iii) finding the statute unconstitutional because of its vagueness as to the enforcement of Public Health Law §§ 1399-0 and 1399-t.
The submissions establish that on December 17, 2003, after three separate administrative hearings held before Department of Health Services Hearing Officer Gary Tarulli, petitioners were each found guilty of violating the New York State “Clean Indoor Air Act” (Public Health Law art 13-E), which prohibits smoking in virtually all indoor areas and workplaces open to the public, including bars and restaurants. In each instance, the hearing officer relied on the testimony of an investigator from the Department of Health Services, who testified that she visited each petitioner’s premises and that when she arrived at each establishment she observed several patrons smoking at the bar. She testified that some patrons smoked more than one cigarette while she was there. Although she testified that “No-Smoking” signs were posted[1] and that no ashtrays were present on the bar or on tables, she testified that she observed “Can the Ban” signs and liquid filled plastic cups which were filled with cigarette butts. She testified that it appeared that the cups had been furnished by the bartenders for use as ashtrays by smoking patrons. She testified further that she was present in each establishment for from 10 to 25 minutes and that she did not observe any employee take any action to stop patrons from smoking. She did not speak to the bartenders[2] or to any of the patrons who were smoking.
Petitioners all testified, by their principals, that in response to the law, they posted “No-Smoking” signs in their establish *494 ments, removed all ashtrays from their establishments, and instructed staff members to inform patrons of the law prohibiting smoking and to ask patrons who smoke to extinguish their cigarettes. Petitioners testified that customers who light cigarettes in their establishments are advised of the no-smoking law and are asked to extinguish their cigarettes. They testified further that not all patrons who are asked to extinguish their cigarettes do so. All petitioners conceded that they do not refuse service to patrons who continue to smoke.
Upon the conclusion of the hearings, virtually identical findings of fact, decisions and orders were issued, pursuant to which petitioners were each found guilty of violating Public Health Law § 1399-0 and fined $650. The court finds that the determination cannot be sustained upon this record.
The Clean Indoor Air Act requires the owners of bars and food service establishments to post “No-Smoking” signs in their establishments and to inform individuals who are smoking in an area where smoking is prohibited that they are in violation of the law. It is undisputed that “No-Smoking” signs were properly posted at Jack McCarthy’s Pub and Tobin’s 2 Pub. The proprietor of Dunton Inn testified without rebuttal that a “No-Smoking” sign was posted and overlooked by the investigator. Accordingly, it appears that the “guilty” findings were principally predicated on the determination that petitioners had failed to comply with the requirement that they inform customers of the law and ask them to refrain from smoking. This determination was based solely on the investigator’s testimony that she observed people already smoking when she entered each establishment and that, during the 10 to 25 minutes she was in each establishment, she did not observe the bartenders take any action to prohibit smoking. However, because the investigator was concededly not present before the smokers began smoking, it is obvious that she has no actual knowledge of what action the bartenders may or may not have taken prior to her arrival. Moreover, the investigator acknowledged that she never spoke to the bartenders or to any of the people who were smoking. Thus, she never asked the bartenders or any of the smokers whether or not the statutorily required warnings had been given. In light of the foregoing, it was unreasonable for her to have concluded that in fact they had not. The mere fact that patrons continued to smoke in defiance of the law is not ipso facto evidence of the establishment’s failure to comply with the law, as the law does not require that bar or restaurant owners *495 refuse service to patrons who refuse to comply with the law.[3] The conclusions that the investigator reached as a result of her limited observations were equally explicable by other, less incriminating, possibilities which, however, she rejected out of hand. (Similarly, providing a minimal receptacle for the cigarette butts of those smokers who persist in violating the law, i.e., the plastic cups observed by the investigator, is not per se unreasonable.)
Because the hearing officer merely adopted the flawed conclusions of the investigator in rendering his findings of fact and decisions, the determinations are arbitrary and capricious and not supported by the evidence. Moreover, the determinations are arbitrary and capricious and affected by an error of law because they are grounded in part on the finding that petitioners “expressed awareness that patrons who continue to smoke inside the premises are in violation of the law, but are not refused service,” thus grafting onto the law and imposing on petitioners an onerous, substantive enforcement requirement that the law itself does not impose.[4]
Accordingly, the petition is granted to the extent that respondent’s findings of fact, decision and order as to each of the three petitioners are vacated and annulled.
To the extent the petition seeks to challenge the constitutionality of the Clean Indoor Air Act, the petition is denied. The submissions do not establish that the Attorney General has been served with notice of the petition, as required by Executive Law § 71. Accordingly, that branch of the petition is denied, with leave to renew, if petitioners be so advised, upon proper *496 notice of the application to the Attorney General. (Matter of McGee v Korman, 70 NY2d 225 [1987].)

. The investigator testified that she did not observe a “No-Smoking” sign in the Dunton Inn; however, the owner testified without rebuttal that a no-smoking sign is posted above the cash register.

. At the Dunton Inn, the investigator spoke to the bartender only to order a drink.

. The investigator testified that several people smoked more than one cigarette while she was present. Assuming, arguendo, that the first time the repeat offenders lit a cigarette on the premises (before the investigator arrived), the bartenders properly advised them about the no-smoking law and asked them to refrain from smoking, it would seem unreasonable to require the bartender to do so with each and every cigarette that a defiant patron might light up.

. The educational pamphlet distributed to bar owners by the State of New York Department of Health merely advises owners and proprietors to “remind” customers of the act, and to “politely explain that they must step outside to smoke.” It urges proprietors to use “common sense” when dealing with defiant customers. It suggests that bar owners and proprietors must “make a reasonable effort to prevent smoking.” Nowhere in the pamphlet, or in the law it purports to explain, is there a directive that bar owners refuse service to smokers or forcibly remove them from their premises.