OPINION OF THE COURT
Deborah H. Karalunas, J.
*542 Petitioner Buies, Inc., doing business as Dodester’s, commenced this action pursuant to CPLR article 78 by filing a petition and order to show cause on September 6, 2005 seeking to vacate a penalty and fine imposed upon it by respondent, the County of Onondaga Health Department. Specifically, the petition seeks to overturn a June 30, 2005 order finding that Dodester’s violated a ban on cigarette smoking in bars. Respondent answered the petition and sought its dismissal in a verified answer dated September 22, 2005.
I. Facts
Since 2003, New York’s Clean Indoor Air Act prohibits smoking in bars, among other places. (See Public Health Law § 1399-0.) Buies, Inc. operates a bar called Dodester’s at 116-120 St. Marks Avenue in Syracuse, and there is no question that Dodester’s is a bar within the meaning of section 1399-0. Acting on complaints, the Onondaga County Health Department sent two inspectors to Dodester’s at 6:45 p.m. on October 27, 2004. At that time, they saw a male patron at the bar light up a Parliament cigarette and the female bartender smoking a cigarette. (Hearing exhibit 5.) The county issued Dodester’s a notice of violation letter on November 3, 2004, referring to the October 27 violation. The letter warned the bar that “enforcement action will be initiated for repeated non-compliance” with section 1399-0 and that “a re-inspection will be conducted to monitor compliance.” (Hearing exhibit 1.) The reinspection took place on December 17, 2004, when a county inspector visited the bar at 5:30 p.m. The inspector saw three female and three male patrons smoking tobacco cigarettes near the bar and pool table. (Hearing exhibit 7.)
The county then issued a notice of hearing to Dodester’s on January 19, 2005, summoning Dodie Ann Buies, as president of Buies, Inc., to attend a March 4, 2005 hearing on the two section 1399-0 violations. (Hearing exhibit 2.) Before the hearing took place, two county inspectors again visited Dodester’s, this time on February 28, 2005 at 5:45 p.m. They saw a male patron light up and smoke a Romy tobacco cigarette. (Hearing exhibit 6.) After one adjournment, an administrative hearing took place on May 5, 2005 with testimony from three Health Department employees, one employee of Dodester’s and four of the bar’s patrons. Only one of the patrons who testified, Terry Schoonmaker, was a smoker. The three Health Department witnesses largely recounted the three violations at issue. The inspectors who were in Dodester’s did not specifically recall seeing “no *543 smoking” signs in place or hearing verbal admonitions from bar employees to the patrons.
The testimony of respondent’s witnesses generally showed that Dodester’s displayed signs on the walls and tables of the bar stating that tobacco smoking in the bar violated the State’s Clean Indoor Air Act. Bar employees also gave postcards concerning the smoking ban to smoking patrons. The bar provided free herbal cigarettes for patrons to smoke. The bar’s on-duty employees verbally informed patrons — when they entered the bar or when they lit up a cigarette — of the law. But bar employees did not ask their patrons to stop smoking in the bar or to leave the premises. Bar employees generally only told a smoking patron once about the law. Bar employees did not refuse to serve patrons who smoked. Schoonmaker testified that he did not expect bar employees to take any action to stop his smoking and that he had nothing to lose by smoking in the bar. (Petitioner exhibit A at 93-94.)
Dodester’s informed its patrons of the smoking ban with a heavy dose of sarcasm. One card that bar employees gave to customers bills itself as being from the “smoking without a permit police” and calls cigarettes a “highly taxed[,] perfectly legal[,] weapon of mass destruction.” (Respondent exhibit 1.) Another card says: “Think I talk to hear myself talk? How many times do I have to tell you” that “according to the health department each and every time” a patron smokes in the bar, he violates the smoking ban. (Respondent exhibit 2.)
The hearing officer found that Dodester’s violated the Clean Indoor Air Act, and the Commissioner of Health adopted the finding. By order dated June 30, 2005, the county Health Commissioner directed Dodester’s to cease its violations and pay a $500 fine. Dodester’s now challenges the order.
II. Discussion
Petitioner claims that it complied with the State’s smoking ban because it posted signs in the bar informing patrons that smoking in the bar is illegal and because its bartenders announce to nearly every patron that smoking in the bar is illegal. Respondent argues that section 1399-0 requires bars like Dodester’s to take “follow-up action . . . beyond saying and displaying mere words” to eliminate smoking on their premises. (Answer 11 37.) According to the Health Department, bar patrons know that Dodester’s will make no effort to stop smoking in the bar and that displaying the signs or saying the warnings is an empty gesture.
*544 In a CPLR article 78 proceeding, the court must determine whether the respondent’s action was arbitrary and capricious, in excess of its authority, or unsupported by substantial evidence. (CPLR 7803.) In order to evaluate the propriety of the Health Department’s action with respect to Dodester’s, the court must evaluate the department’s interpretation of the Clean Indoor Air Act. Specifically, the issue before the court is whether the conduct of Dodester’s permitted smoking in the bar in violation of Public Health Law § 1399-0.
Two reported cases on alleged section 1399-0 violations in bars reached different results based on the facts before the court. In Matter of Patricia Ann Cottage Pub, Inc. v Mermelstein (6 Misc 3d 492, 494-495 [Sup Ct, Suffolk County 2004]), the court held that the Clean Indoor Air Act requires bar owners to post “no smoking” signs in their establishments and inform customers of the law and ask them to refrain from smoking but not to refuse service to customers who smoke. It found no violation of the act where the Health Department’s investigator was not present when bar patrons began smoking and thus could not establish what action bartenders took to obtain compliance with the law. (Id. at 494.) In Matter of Allen v Cattaraugus County Bd. of Health (4 Misc 3d 383, 384 [Sup Ct, Cattaraugus County 2004]), the court also held that the act requires bar owners to post “no smoking” signs and advise patrons who smoked that they were violating the law. However, the court also held that the bar owner must make a “good faith” effort to obtain compliance and not post its signs or issue its warnings with a “wink, wink.” (Id.) Although the court in Patricia Ann Cottage did not state so explicitly, it essentially ruled that the record lacked a basis from which to determine whether the bar owners’ compliance efforts were made in good or bad faith. It also recognized the requirement that bar employees must ask their customers to refrain from smoking. (Patricia Ann Cottage, 6 Misc 3d at 494.) The two cases are not so far apart as they might initially seem.
This court’s analysis begins with the statute. Written in the passive voice, the words of the law state that “[s]moking shall not be permitted and no person shall smoke in the following indoor areas ... (2) bars.” (Public Health Law § 1399-0.) But the statute does not indicate explicitly who must act to enforce the law. Petitioner asks the court to consider other provisions of article 13-E as evidence that the law only requires bar owners to display “no-smoking” signs and permits bar owners to desig *545 nate an agent to inform patrons that smoking is illegal. (See § 1399-p [1]; § 1399-t [4].) Bar owners do have these obligations, which the courts in both Patricia Ann Cottage and Allen recognized. However, article 13-E, as the Allen court held, also indicates that a bar owner’s compliance efforts at a minimum must contain an element of good faith.
Section 1399-s is instructive on this point. Subdivision (1) applies to owners, operators or managers, and it states in relevant part that it is unlawful for an entity that owns an area in which smoking is prohibited to fail to comply with the provisions of article 13-E. It allows an affirmative defense if the owner did not exercise actual control of the area in which prohibited smoking took place. Subdivision (2) applies to employers, and it states that it is unlawful for employers subject to smoking prohibitions to fail to comply with section 1399-o (1). It allows an affirmative defense that “the employer has made good faith efforts to ensure that employees comply” with the act. (Public Health Law § 1399-s [2].) Finally, subdivision (3) applies to individuals and simply states that it is unlawful to smoke in an area where smoking is prohibited.
When sections 1399-s and 1399-0 are read together, the opening sentence of section 1399-0 becomes more clear. Subdivisions (1) and (2) of section 1399-s relate to the words “smoking shall not be permitted” in section 1399-0, while subdivision (3) relates to the words “no person shall smoke.” When an individual smokes in a restricted area, the statute affords him no affirmative defense. However, when owners or employers “permit” smoking in restricted areas, they may raise affirmative defenses of lack of actual control or good faith, respectively. Interestingly, when the law allowed designated smoking areas in restaurants, owners could avail themselves of an affirmative defense where “notice of a violation was provided to a customer.” (Public Health Law former § 1399-s [2] [amended by L 2003, ch 13, § 5, eff July 24, 2003].) When the Legislature extended the smoking ban to include bars and all restaurant space, it dropped this affirmative defense. Thus, in order to avoid liability, bar owners who control the premises where illegal smoking occurs must do more than provide notice of a violation to their customers. There is no question that merely posting signs and informing patrons of the law is insufficient.
The legislative history of the Clean Indoor Air Act as passed in 1989 and amended in 2003 is consistent with this conclusion. A December 24, 1987 interpretive memorandum from the New *546 York State Department of Health states that “[questions arising about the construction of this bill are to be resolved in favor of nonsmokers.” (Bill Jacket, L 1989, ch 244, at 45.) The same memorandum states that “[t]he person in charge of a place covered by this bill must request compliance by all persons in such place” and recognized that the proposed law involved businesses in enforcement matters. {Id. [emphasis added]; see also, id. at 48.) Merely informing a smoking patron of the law, therefore, is insufficient. If this court is to resolve questions about the law in favor of nonsmokers, then owners at a minimum and in good faith must ask smokers to stop smoking.
This court need not reach the issue of whether the Clean Indoor Air Act is a strict liability statute, whether an owner’s compliance efforts must be successful, or whether a bar owner may avail himself or herself of a good-faith defense. In this case, substantial evidence shows that Dodester’s did not meet even a good-faith threshold. The evidence in the record establishes that Dodester’s paid lip service to the act but did not comply with the law. All of the signs and verbal warnings in the bar did nothing to counteract the message that smoking was in fact permitted at Dodester’s. Dodester’s employees did not ask smokers to stop smoking. The evidence was undisputed that patrons smoked tobacco cigarettes in the bar without interference or consequences. The cards that Dodester’s staff distributed to customers speak volumes regarding the bar’s disdain for the law.
Even if Public Health Law § 1399-0 does not require a bar owner to stop all smoking on its premises, it does not permit the bar owner to actively undermine the law. Respondent was not arbitrary or capricious in determining that the actions of Dodester’s were not taken in good faith, effectively permitted smoking in its bar, and violated section 1399-0.
Based on the foregoing, I deny the motion of petitioner and dismiss the petition.