■ In the Matter of PATRICIA ANN COTTAGE PUB, INC., Doing Business as JACK McCARTHY's PUB, et al., Respondents, v LINDA MERMELSTEIN, Appellant. [830 NYS2d 184]—

In a proceeding pursuant to CPLR article 78, inter alia, to review three separate determinations of Linda Mermelstein, Commissioner of the County of Suffolk Department of Health Services, each dated January 13, 2004, made after hearings, finding the petitioners guilty of violating Public Health Law § 1399-*o*, and imposing penalties, respectively, Linda Mermelstein appeals, as limited by her brief, from so much of a judgment of the Supreme Court, Suffolk County (Baisley, Jr., J.), dated January 6, 2005, as annulled those determinations on the ground that they were arbitrary and capricious.

Ordered that the appeal is dismissed and the judgment is vacated; and it is further,

Adjudged that the petition is granted, on the law and the facts, to the extent that (1) so much of the determinations concerning the petitioners Patricia Ann Cottage Pub, Inc., doing business as Jack McCarthy's Pub, and Tobins 2 Pub, as found those petitioners guilty of violating Public Health Law § 1399-*o* are annulled, and the penalties imposed with respect to those petitioners are vacated, and (2) so much of the penalty concerning the petitioner Mariella Enterprises, doing business as Dunton Inn, as directed that that petitioner immediately correct the violation is vacated; the petition is otherwise denied, the determinations are otherwise confirmed, and the proceeding is otherwise dismissed, with costs to the respondents Patricia

Ann Cottage, Inc., doing business as Jack McCarthy's Pub, and Tobins 2 Pub.

The petitioners, Patricia Ann Cottage Pub, Inc., doing business as Jack McCarthy's Pub (hereinafter McCarthy's), Tobins 2 Pub (hereinafter Tobins), and Mariella Enterprises, doing business as Dunton Inn (hereinafter Dunton), were issued notices of violation of New York Public Health Law § 1399-*o*, one of the provisions of chapter 13-E of the New York Public Health Law, commonly known as the "Clean Indoor Air Act" (hereinafter the Act), by Linda Mermelstein, Commissioner of the County of Suffolk Department of Health Services (hereinafter the Commissioner). After three separate administrative hearings held before a Department of Health Services hearing officer, the petitioners were each found to have committed a violation of section 1399-*o* by permitting smoking in their establishments, directed to "immediately correct the violation," and to pay a civil penalty in the sum of $650. The petitioners commenced this proceeding to review and annul the determinations and penalties, and for a declaration that Public Health Law § 1399-*o* is unconstitutionally vague.

Since the petition raised a substantial evidence question, the Supreme Court should have transferred the proceeding to the Appellate Division. Nonetheless, since the record is now before this Court, we will treat the proceeding as if it had been properly transferred, and review the matter de novo (*see Matter of Natividad v Glen Cove Hous. Auth.*, 308 AD2d 542 [2003]; *Matter of Sweeney v Barrios-Paoli,* 266 AD2d 398 [1999]).

Judicial review of a determination of an administrative body made after a hearing is limited to whether or not that determination is supported by substantial evidence (*see Matter of Keller v Town of Huntington*, 13 AD3d 447 [2004]; *Matter of Scibelli v Planning Bd. of Town of Woodbury*, 12 AD3d 450 [2004]). Substantial evidence has been defined as "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (*300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 180 [1978]). In determining whether substantial evidence supports the administrative determination, a reviewing court "may not weigh the evidence or reject the choice made by [the Hearing Officer] where the evidence is conflicting and room for choice exists" (*Matter of Berenhaus v Ward*, 70 NY2d 436, 444 [1987] [internal quotation marks and citation omitted]; *see Matter of Masons v Martinez*, 8 AD3d 671, 672 [2004]; *Matter of Maspeth Ave. Operating Corp. v Martinez*, 2 AD3d 446, 447 [2003]). Moreover, substantial evidence is a lower bar than a preponderance of the evidence (*see*

*People ex rel. Consolidated Water Co. v Maltbie*, 275 NY 357 [1937]; *Matter of Erin Wine & Liq. Store, Inc. v O'Connell*, 283 App Div 443 [1954]). In other words, there is a low threshold for the determination of the Commissioner to be sustained. Substantial evidence may be supplied by circumstantial evidence (*see Matter of S & R Lake Lounge v New York State Liq. Auth.*, 87 NY2d 206, 209 [1995]). No matter how lax the standard of review may be, it may not be based solely on conjecture or surmise (*see 300 Gramatan Ave Assoc. v State Div. of Human Rights, supra; cf. Matter of Milea v Easy Appliances Div., Murray Corp.*, 29 AD2d 730 [1968]).

This case involves consideration of certain provisions of the Act. Section 1399-o (2) of the Act provides, in pertinent part: "Smoking shall not be permitted and no person shall smoke in the following indoor areas: . . . bars." Section 1399-s (3) of the Act provides that failure to abide by § 1399-o constitutes a violation and that "[i]t shall be unlawful for any person to smoke in any area where smoking is prohibited or restricted [under § 1399-o]." Section 1399-t requires that the owner of, inter alia, a bar or his designee inform individuals smoking in their premises that they are in violation of the Act. Section 1399-x provides that: "The commissioner shall not promulgate any rules or regulations to effectuate the provisions of . . . [§§ 1399-n, 1399-o (6), or § 1399-p (1) and] shall not promulgate any rules or regulations that create, limit or enlarge any smoking restrictions."

All three cases have the following facts in common. A notice of violation was sent to the owners of all three establishments advising them that the County of Suffolk Department of Health Services had received complaints against them for violation of section 1399-o, and that an inspector would come to the establishment to investigate. On various dates, an inspector observed patrons smoking in each of the establishments. Although the patrons were in direct view of the bartenders, the inspector did not see the bartenders take any action to prevent or stop the individuals from smoking. No ashtrays were present, but plastic cups filled with liquid were observed. No proof was submitted establishing that the smoking patrons were served alcohol after lighting their cigarettes. In no instance did the inspector talk to the bartenders to request that they insure that the smoking stop, and in each instance, the inspector stayed for less than 30 minutes. With respect to McCarthy's, the inspector was present twice—once, no smoking was observed, and on the other occasion, the inspector was present for less than 10 minutes. Each owner testified that he had directed staff

members to inform patrons of the law prohibiting smoking and to request that those patrons who smoke extinguish their cigarettes. The inspector acknowledged that the bartenders may have initially instructed the patrons that they should not smoke, as the bartenders were generally directed to do, but that she did not observe any further action taken to insure compliance with those instructions. The investigator observed cigarette butts in the plastic cups filled with liquid (i.e., serving as substitute ashtrays) and, at Dunton's, on the floor. With respect to Dunton, there was conflicting testimony about whether "No Smoking" signs required by Public Health Law § 1399-p were posted, but it was conceded by the Commissioner that in the other two establishments, several such signs were prominently displayed.

Based on this record, each of the three establishments was found to have violated the only charges tendered, to wit, that they permitted smoking in violation of Public Health Law § 1399-o. Each establishment was directed to "immediately correct the violation" and to pay a civil penalty in the sum of $650.

We conclude that, based on the record before us, there was not substantial evidence to support the determinations with respect to McCarthy's or Tobins. Here, the only evidence supporting the Commissioner's determinations was that the investigator saw patrons smoking during a very brief period of time (as little as a 10-minute interval with respect to McCarthy's), and did not see the bartender take any affirmative steps to cure the patrons' violation of the statute. Based on this evidence, the Commissioner argues that we must conclude there is sufficient proof that the bartenders permitted the smoking to occur.

However, we cannot ignore the other proof in the record that would prevent a reasonable person from reaching that conclusion. First, Public Health Law § 1399-o, unlike Public Health Law § 1399-p (which requires "No Smoking" signs to be posted), does not inform the proprietor of what affirmative steps must be taken to insure that smoking is not permitted. Contrary to the Commissioner's assertions, brochures distributed by the Commissioner merely state that the owner of a bar must make a reasonable effort to prevent smoking, without providing any information as to what those reasonable efforts should be. The brochure further states, "you may not allow smoking at your establishment. You must inform customers who are smoking that smoking is not permitted indoors." That obligation is further amplified to specify that in the event the customers insist on smoking: "You or your staff must remind them of the Act and you may politely explain that they must step outside to smoke. If a customer refuses to comply with the Act, use com-

mon sense. . . . DO NOT CALL the police unless the violator is threatening physical harm or is belligerent.''

Second, with respect to McCarthy's and Tobins, both establishments had complied with Public Health Law § 1399-p and had several "No Smoking" signs informing patrons that smoking was not permitted on the premises prominently displayed. Both establishments had removed all ashtrays from their premises.

Third, both McCarthy's and Tobins submitted uncontradicted testimony that (in accordance with the Commissioner's brochure) generally, patrons who smoked were advised not to. There is no proof whatsoever that upon seeing a patron smoke, the investigator or anyone else at the bar asked the bartender to insure that the smoking desist and that the bartender refused to so act (cf. Matter of Allen v Cattaraugus County Bd. of Health, 4 Misc 3d 383 [2004] [where the inspector informed the bartender that people were smoking in violation of the Act, and the bartender stated she would not enforce the ban]). Lastly, there was no proof that smoking patrons were served (cf. Matter of Buies, Inc. v Morrow, 12 Misc 3d 541 [2006] [where smoking patrons were observed being served by the bartender]).

Based on these circumstances, the record is devoid of any evidence that the bartenders failed to act in a manner consistent with the instructions of the Commissioner. In this regard we must emphasize this is not a question of credibility of conflicting versions of the facts as in an instance where the investigator's testimony is contrary to that of the bartenders with respect to the manner in which enforcement was sought. Rather, this is a situation where the investigator's testimony failed to demonstrate that the suggestions offered by the Commissioner's brochure were not followed. Accordingly, the Commissioner's determinations with respect to McCarthy's and Tobins must be annulled. To hold otherwise would permit the inspector to merely state that there was smoking in the premises and thereby establish a violation of the statute. The plain language of the statute encompassed in Public Health Law § 1399-t (4) and common sense dictate that something more than that must be proffered before establishing a breach of a statutory obligation resulting in a civil fine.

In contrast, the Commissioner's determination with respect to Dunton must be modified. The Dunton case illustrates the central point about the sufficiency of substantial evidence. In Dunton, the investigator testified that there were no "No Smoking" signs present. The owner testified that there was one such sign over the cash register. Neither party submitted additional

proof to bolster its version of this fact. Despite the fact that Dunton was not cited for failing to *"prominently"* (Public Health Law § 1399-p [1] [emphasis added]) post "No Smoking' *signs"* (*id.* [emphasis added]) in violation of Public Health Law § 1399-p (which might give credence to the owner's version of this fact), based on the testimony of the investigator as to other circumstances indicating prolonged smoking by patrons and testimony that she saw no "No Smoking" sign, coupled with the owner's testimony that there was only one such sign by the cash register (contrary to Public Health Law § 1399-p which required that *signs* be prominently displayed), there was substantial evidence to support the Commissioner's determination that Dunton "had not made adequate efforts" to prevent patrons from smoking, that is, to sustain the charge of impermissibly permitting smoking. In Dunton, the Commissioner, in effect, was confronted with divergent views of the facts and, in essence, found the testimony of the investigator to be more credible. Thus, unlike the cases involving the other two establishments, in Dunton, there were some facts presented by the inspector to support the determination of the Commissioner.

Although we conclude that there was substantial evidence to support the determination of the Commissioner that Dunton violated Public Health Law § 1399-*o* by permitting smoking on the premises, that portion of the Commissioner's order which directs compliance with Public Health Law § 1399-*o* is vague and not capable of enforcement since it failed to specify the steps which have to be taken to make Dunton compliant (*see Matter of Carlson v Podeyn*, 12 AD2d 810 [1961]; *Adams v Adams*, 179 App Div 152 [1917]).

To the extent that the petition raises a challenge to the constitutionality of the Act, we do not consider such challenge (*see* CPLR 1012 [b] [3]; Executive Law § 71; *Matter of McGee v Korman*, 70 NY2d 225 [1987]). Krausman, J.P., Spolzino, Lifson and Dillon, JJ., concur.