■ In the Matter of CAFÉ LA CHINA CORP., Petitioner, v NEW YORK STATE LIQUOR AUTHORITY, Respondent. [841 NYS2d 30]—

Determination of respondent, dated July 11, 2005, which, after an evidentiary hearing, sustained two charges of violating Alcoholic Beverage Control Law § 65 (2), and imposed a $3,000 civil penalty or, in the event of noncompliance, a 20-day suspension plus $1,000 bond forfeiture, confirmed, the petition denied and the proceeding (transferred to this Court by order of Supreme Court, New York County [Rosalyn Richter, J.], entered July 25, 2005) dismissed, without costs.

It is settled that judicial review of an administrative determination is limited to consideration of whether or not such determination is supported by substantial evidence (*300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 179 [1978]; *Matter of Vallebuona v Kerik*, 294 AD2d 44, 50 [2002]), and the issue of whether the agency's findings are supported by substantial evidence is a question of law for the courts (*300 Gramatan Ave. Assoc.*, 45 NY2d at 181; *Matter of Goldsmith v DeBuono*, 245 AD2d 627, 628 [1997]). Substantial evidence, which has been characterized as a "minimal standard" (*Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d 179, 188 [1998]; *Matter of Joseph v Johnson*, 27 AD3d 563, 563 [2006]), or as comprising a "low threshold" (*Matter of Patricia Ann Cottage Pub, Inc. v Mermelstein*, 36 AD3d 816, 818 [2007]), must consist of such relevant proof, within the whole record, "as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (*300 Gramatan Ave. Assoc.*, 45 NY2d at 180; *see also Matter of Star Rubbish Removal Corp. v Martinez*, 15 AD3d 587, 588 [2005]). The Court of Appeals has noted that substantial evidence "requires less than 'clear and convincing evidence' (*Matter of Carriage House Motor Inn v City of Watertown*, 136 AD2d 895, *supra*), and less than proof by 'a preponderance of the evidence, overwhelming evidence or evidence beyond a reasonable doubt' " (*FMC Corp.*, 92 NY2d at 188, quoting *300 Gramatan Ave. Assoc.*, 45 NY2d at 180).

Indeed, as a burden of proof, "it demands only that 'a given inference is *reasonable and plausible, not necessarily the most probable*' " (*Matter of Miller v DeBuono*, 90 NY2d 783, 793 [1997], quoting Borchers and Markell, New York State Administrative Procedure and Practice § 3.12, at 51 [1995] [emphasis added]; *see also Matter of Berenhaus v Ward*, 70 NY2d 436, 443-444 [1987]), and the courts may not weigh the evidence or reject the conclusion of the administrative agency where the evidence is conflicting and room for choice exists (*id.* at 444; *Matter of Stork Rest. v Boland*, 282 NY 256, 267 [1940]; *Matter of Acosta v Wollett*, 55 NY2d 761, 763 [1981]; *Matter of Verdell v Lincoln Amsterdam House, Inc.*, 27 AD3d 388, 390 [2006]).

In this matter, we find that the determination as to both charges should be confirmed. "Hearsay evidence can be the basis of an administrative determination" and, if sufficiently probative, it alone may constitute substantial evidence (*Matter of Gray v Adduci*, 73 NY2d 741, 742 [1988]; *Matter of Hoch v New York State Dept. of Health*, 1 AD3d 994 [2003]). Likewise, substantial evidence may be supplied by circumstantial evidence (*Matter of S & R Lake Lounge v New York State Liq. Auth.*, 87 NY2d 206, 209 [1995]; *Patricia Ann Cottage Pub*,Inc., 36 AD3d at 818).

With regard to the first charge, Officer Reilly testified that the security guard at the establishment informed him that the intoxicated individual had been drinking inside the establishment before he stumbled outside, fell and hit his head. The fact that the officer could not recall the security guard's exact words, or the type of beer the intoxicated individual was drinking, is irrelevant. As to the second charge, the undisputed evidence that the intoxicated person was drinking on the premises, coupled with the police officer's testimony regarding his condition outside the premises on the officer's arrival, is more than sufficient to sustain the agency's determination as to the second charge. To the extent that petitioner's arguments rest on conflicting testimony, we note that the Administrative Law Judge's factual findings, which turn on the issue of credibility, are entitled to great weight (*Matter of Grossberg v Christian*, 245 AD2d 118 [1997]; *Matter of Motell v Napolitano*, 186 AD2d 989, 990 [1992]), and we are presented with no basis to disturb those findings. Concur—Tom, J.P., Andrias, Marlow and Nardelli, JJ.

McGuire, J., dissents in a memorandum as follows: Petitioner, which operates an eatery in Mount Kisco, was served by respondent with notice of a proceeding to cancel or revoke the license to sell and serve beer that respondent had issued petitioner. The

notice asserted that on September 27 and October 11, 2004 petitioner violated Alcoholic Beverage Control Law § 65 (2), which prohibits the provision of alcoholic beverages to a "visibly intoxicated person." Two charges—one for each date—were brought against petitioner.

An administrative hearing was subsequently held. With respect to the September 27 charge, respondent presented the testimony of Mount Kisco Police Officer Janik, who, while serving as the desk officer at approximately 2:00 A.M. on that date, received a telephone call from Edwin Orrego, a patron at petitioner's establishment. According to Officer Janik, Orrego called to request that an ambulance be sent to the establishment for "an intoxicated male [i.e., an individual named Sandoval] who exited the premises, stumbled outside . . . and fell and hit his face and head." Officer Janik dispatched Police Officer Reilly to the scene.

Officer Reilly testified that, upon arriving at the establishment, he noticed Sandoval with bloodshot eyes and "the odor of an alcoholic beverage emanating from him" laying near the doorway to the establishment. While at the establishment Officer Reilly had a conversation with Orrego, whom the officer knew. According to Officer Reilly, Orrego stated words to the effect that: "[Sandoval] was inside drinking and he was leaving [petitioner's establishment]. He was stumbling and he—he lost his balance . . . and fell on his face." On cross-examination, however, Officer Reilly testified that he did not recall whether Orrego told him that Orrego had seen Sandoval drinking inside the establishment. The officer went on to testify that there was "a possibility [Orrego] said [that he saw Sandoval drinking in petitioner's establishment], but [the officer could not] recall." Officer Reilly also spoke with a security guard at the establishment who told the officer that Sandoval had been in the establishment and was drunk.

In an effort to clarify the substance of Officer Reilly's testimony, the Administrative Law Judge (ALJ) questioned the officer regarding whether Orrego, the security guard, or both stated that they saw Sandoval drinking inside the establishment. The following colloquy between the ALJ and Officer Reilly ensued:

"[ALJ]: I just want to make sure that you understand that you are to tell me to the best of your ability. But if you—you know, I know it's a long time ago, and you're involved with a lot of police actions. So, you can't remember everything. But did the security guard or Mr. Orrego actually tell you that [Sandoval] was consuming alcohol at any point inside the premises? Either one of them?

"[OFFICER REILLY]: What I recall is just the basic understanding and knowledge of what happened. And my belief is that [Sandoval] was inside the premises, drinking by what they were saying to me. But I don't recall the actual words that—[Sandoval] was inside drinking, he exited and he fell down. He was too intoxicated—

"[ALJ]: Okay. I don't need the actual words, but I want to know did they tell you that they observed him actually consuming alcohol inside the premises? Is that your understanding or not your understanding?

"[OFFICER REILLY]: Basically, my understanding is that they said he was drinking inside the establishment. Now, did they say Corona or Budweiser or—

"[ALJ]: No, no. Again, I don't care what, I just want to know was [Sandoval] drinking, or is it possible that he was drunk in another premises and went there to use the bathroom and wasn't drinking? . . .

"[OFFICER REILLY]: Yeah. I don't think they would have let [Sandoval] in [petitioner's establishment] intoxicated, the condition he was in. I don't think they're allowed to let [Sandoval] in, the bouncers. They're always at that door and they—and a lot of times they deny us access into the place. But, you know, they're very strict about that. So, I don't think they would let an intoxicated person in. So, my assumption is that [Sandoval] was drinking inside and he walked out. And [Sandoval] was drinking the alcohol inside.

"[COUNSEL FOR PETITIONER]: But that's an assumption on your part, correct?

"[OFFICER REILLY]: Yeah."

With respect to the October 11 charge, respondent presented the testimony of Mount Kisco Police Officer Whalen. Officer Whalen testified that while patrolling the neighborhood of the establishment at approximately 3:00 A.M., he observed two security officers from the establishment (i.e., Flores and Vanegas) motioning to him. The officer had a conversation with Flores, whom the officer knew. Officer Whalen recounted that Flores had told him that: "[the security officers] had a problem with a fellow [i.e., Molatana] inside the bar, that they cut off. They weren't going to serve him anymore. And [Molatana] gave them a hard time and caused a bit of a problem in the bar. And [the security officers] pushed him out the door." Flores also told Officer Whalen that, about 10 minutes after removing Molatana from the establishment, the security officers went outside to see if Molatana had left the area. The security officers observed

Molatana throwing beer bottles at Vanegas' vehicle and confronted and detained Molatana until the police arrived. Officer Whalen stated that Molatana had bloodshot eyes, was slurring his speech and had the smell of alcohol on his breath.

Mount Kisco Police Officer Costanzo, another officer who was outside of petitioner's establishment at approximately 3:00 A.M. on October 11, also testified. Officer Costanzo stated that Flores told him that Molatana was drinking inside the establishment, became intoxicated and was ejected. Flores also told Officer Costanzo about the events subsequent to Molatana's ejection from the establishment, an account that is substantially similar to the one Flores gave to Officer Whalen.

On its case, petitioner presented the testimony of Flores. With regard to the September 27 incident, Flores, who was working at the establishment at the time, testified that Sandoval attempted to enter but Flores refused to allow him to enter because he was drunk. Flores did, however, escort Sandoval to the bathroom in the establishment because Flores did not want Sandoval to relieve himself in public. Flores stated that he followed Sandoval to the bathroom and brought him back outside once he was finished using the bathroom. Sandoval, according to Flores, did not consume any alcohol in the establishment. Flores spoke with a police officer regarding Sandoval's fall but denied telling the officer that Sandoval drank in the establishment.

Concerning the October 11 incident, Flores testified that Molatana arrived at the establishment around midnight, drank one or two beers and was ejected between 1:00 A.M. and 2:00 A.M. after breaking a bottle. Molatana was not, according to Flores, drunk at the time he was ejected. At approximately 3:00 A.M., Flores and Vanegas left the establishment and the bottle-throwing incident occurred. Flores did not see Molatana between the time Molatana was ejected from the establishment (between 1:00 A.M. and 2:00 A.M.) and 3:00 A.M. Flores testified that he told the officers that Molatana had been ejected from the establishment for breaking a bottle and that Molatana had thrown a bottle at Vanegas' vehicle, but he denied telling the officers how much alcohol Molatana had consumed while at the establishment. Molatana lived, according to Flores, 5 to 10 minutes walking distance from the establishment. Another bar was also within that distance. Stern, the president of petitioner, testified that she knew Molatana because he came to the establishment on a weekly basis. Stern characterized Molatana as a "slow drinker" who would take "a long time" to consume a beer.

The ALJ, crediting the testimony of the police officers, found petitioner guilty of the charges, and respondent sustained the charges and imposed a $3,000 penalty. This CPLR article 78 proceeding to annul the determination was commenced and subsequently transferred to this Court. The only issue is whether respondent's determination is supported by substantial evidence.

"It is well established that in order to annul an administrative determination made after a constitutionally required hearing a court must be satisfied, after reviewing the record as a whole, that the record lacks substantial evidence to support the determination. While the quantum of evidence that rises to the level of substantial cannot be precisely defined, the inquiry is whether in the end the finding is supported by the kind of evidence on which responsible persons are accustomed to rely in serious affairs" (*Matter of Lahey v Kelly*, 71 NY2d 135, 140 [1987] [internal quotation marks and citations omitted]; *see 300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 181 [1978] ["In final analysis, substantial evidence consists of proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably—probatively and logically"]). Hearsay evidence may serve as the sole basis for an administrative determination and permit a finding that such a determination was supported by substantial evidence (*see Matter of Gray v Adduci*, 73 NY2d 741 [1988]).

The first charge was not supported by substantial evidence. The only evidence adduced by respondent at all relating to whether petitioner served alcohol to a "visibly intoxicated" Sandoval was the testimony of Officer Reilly. Officer Reilly, however, did not even provide hearsay testimony that Sandoval was drinking inside the establishment. Rather, after first suggesting that Orrego had told him that Sandoval had been drinking in the establishment immediately before Sandoval's accident, Officer Reilly made clear that he could testify only that there was a possibility that he had been so informed by Orrego. Moreover, he ultimately stated that he assumed that Sandoval had been drinking in the establishment. Thus, while hearsay alone may serve as the sole basis for an administrative determination, here respondent presented nothing more than the specter of hearsay.

Moreover, this aspect of the determination should be annulled for an independent reason: there was no evidence that Sandoval was visibly intoxicated at the time he was served alcohol in the

establishment (whenever that was, and assuming he was served). There was evidence that Sandoval was stumbling and fell as he was leaving and Officer Reilly testified that Sandoval's eyes were bloodshot and he had an odor of alcohol about him. From this evidence, it certainly would be reasonable to infer that Sandoval was visibly intoxicated while inside the establishment for some period of time before he left. Nothing but speculation, however, supports the proposition that during this period of time—however long it may have been—Sandoval was served alcohol. From the fact that Sandoval may have been "visibly intoxicated" in the establishment, it scarcely follows that he was served alcohol while "visibly intoxicated." In short, the evidence is not "of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that" the conclusion that petitioner served a visibly intoxicated person (i.e., Sandoval) "may be extracted reasonably" (*300 Gramatan Ave. Assoc.*, 45 NY2d at 181).

Nor was the second charge supported by substantial evidence. Officer Costanzo testified that Flores told him that Molatana was drinking inside the establishment, became intoxicated and was ejected. Specifically, the officer stated that Flores told him that "[the security officers] had a problem with [Molatana] inside the bar, that they cut off. They weren't going to serve him anymore. And [Molatana] gave them a hard time and caused a bit of a problem in the bar. And [the security officers] pushed him out the door." This evidence, as well as the testimony of both Officers Whalen and Costanzo that Molatana was drunk when they arrived at the scene, establishes nothing more than that Molatana was intoxicated inside the establishment before being ejected. It does not shed any light on the critical issue of whether petitioner *served* a visibly intoxicated person. Thus, respondent's determination to sustain the second charge is not supported by substantial evidence.

This is not a situation where the evidence before respondent allowed "room for choice" (*300 Gramatan Ave. Assoc.*, 45 NY2d at 180) on either of the charges. Rather, the evidence permits only one reasonable conclusion—that respondent did not demonstrate that petitioner violated Alcoholic Beverage Control Law § 65 (2) on either September 27 or October 11. Since respondent's determination "is [not] supported by the kind of evidence on which responsible persons are accustomed to rely in serious affairs" (*Lahey*, 71 NY2d at 140), I vote to grant the petition, annul the determination and vacate the penalty.