Matter of Seon v New York State Dept. of Motor Vehs. (2018 NY Slip Op 02240)





Matter of Seon v New York State Dept. of Motor Vehs.


2018 NY Slip Op 02240


Decided on March 29, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 29, 2018

Tom, J.P., Mazzarelli, Andrias, Oing, Singh, JJ.


4534 260242/16

[*1]In re Wayne Seon, Petitioner,
v
The New York State Department of Motor Vehicles, et al., Respondents.


Armienti DeBellis Guglielmo & Rhoden LLP, New York (Mohammad M. Haque of counsel), for petitioner.
Eric T. Schneiderman, Attorney General, New York (Judith N. Vale of counsel), for respondents.

 
In this proceeding brought pursuant to CPLR article 78 (transferred to this Court by order, Supreme Court, Bronx County [Kenneth L. Thompson, Jr., J.], entered on or about October 3, 2016), to annul the determination of respondent New York State Department of Motor Vehicles (DMV), dated March 28, 2016, which, after a hearing, upheld the suspension of petitioner's driver's license for six months based on a violation of Vehicle and Traffic Law § 1146, the petition is granted, without costs, the determination of DMV is annulled and vacated, and petitioner's driver's license reinstated.
This proceeding arises out of a summons issued to petitioner, a New York City Transit bus driver, for allegedly failing, in violation of Vehicle and Traffic Law section 1146(c), to "exercise due care to avoid colliding" with an 88-year-old pedestrian, causing the pedestrian's death. A hearing was held to adjudicate the summons, at which Charlie Viera, the investigating officer, who is an accident reconstruction specialist, and petitioner both testified. The only exhibits submitted into evidence by DMV were two accident reports, one prepared at the scene and one prepared a month later by Viera, after the pedestrian died, and a witness statement provided by petitioner. Viera was not assigned to the matter until after the pedestrian's death.
According to the report prepared at the scene, the collision occurred on the evening of November 13, 2014, at the intersection of Vyse Avenue and East 174th Street in the Bronx. The bus was making a right turn onto Vyse Avenue, with a green light, and the pedestrian was walking across Vyse Avenue, in the crosswalk, with the walk signal. The bus "had front tires already through the crosswalk when [the pedestrian] made contact, becoming pinned under the passenger side door of the bus behind the front wheel." According to the report prepared by Viera after the pedestrian died and he was assigned the investigation, the pedestrian was admitted to St. Barnabas Hospital and died there "as a result of his injuries." The report does not explain on what basis Viera believed that the pedestrian's death, over one month after the accident, was directly caused by the accident. Further, the report states that at the scene of the accident his injuries, which were to his legs, "were not considered life threatening."
Viera's direct testimony largely consisted of his reading or summarizing the contents of the reports. He concluded that petitioner "struck the pedestrian with the front right side of the bus, running over the legs of the pedestrian with the front passenger's side tire." Although Viera testified that the pedestrian "suffered a severe leg injury" and "was transported by EMS to St. Barnabas where he later died as a result of his injuries," he did not identify on what basis he concluded that the injury was severe or that, as implied, the pedestrian's death could be linked to the accident. On cross-examination, Viera acknowledged that, when the accident occurred, it was nighttime and it was raining heavily, and the crosswalk was very poorly lit. He further admitted that the pedestrian was wearing a hoodie and carrying an open umbrella, and that these things could have obstructed his vision. As for the injury, Viera testified that the pedestrian's [*2]death "was determined complication from the collision of the accident [sic]." Again, however, he did not explain who determined this. Further, he conceded that he did not know which part of the pedestrian's leg had been impacted, and that it could have possibly been a foot. Injury to a foot, he acknowledged, is not generally considered life threatening. Finally, Viera stated that he did not read any medical reports, and that he did not know whether there were "other medical complications" that caused the pedestrian to die.
Petitioner testified that as he made his right hand turn onto Vyse Avenue, a one-way street, he noticed parked cars on both sides of the street, and no pedestrians in the crosswalk. He scanned his mirrors on the left and right side of the bus to make sure that he didn't hit any pedestrians or parked cars.
After scanning his mirrors, he heard a thump on the right side of the bus, by the front door. He secured the bus, then stepped out, and saw the pedestrian "laying on the side of the tire, just behind the tire itself, wearing a black hoodie (with the hood over his head) and a big, large ... black umbrella." Petitioner stated that he did not take any drugs for 24 hours before the accident, and that 24 hours after the accident, he tested negative for drugs and alcohol.
The Administrative Law Judge found that the charge had been established by clear and convincing evidence that "the motorist failed to exercise due care and violated 1146C [sic] of the Vehicle and Traffic Law." The Administrative Law Judge imposed a fine of $150 and, noting that petitioner had no relevant convictions in the past 18 months, and "given the lighting conditions, the weather conditions, the motorist's record in the last 18 months," his license would be suspended for 75 days "as per statute." The Administrative Law Judge did not mention the pedestrian's death in declaring that petitioner violated Vehicle and Traffic Law § 1146, other than to note the death in fashioning a penalty. The following day DMV sent petitioner an order of suspension, stating that his license would be suspended for six months pursuant to Vehicle and Traffic Law § 510.2 for failure to exercise due care with serious physical injury resulting. Petitioner appealed to the Traffic Violations Bureau Appeals Board of DMV, which upheld the determination.
Petitioner commenced this article 78 proceeding, arguing that neither substantial evidence nor clear and convincing evidence supports the charge that he failed to exercise due care and violated Vehicle and Traffic Law § 1146(c); that his due process rights were violated because the admitted evidence was not provided to him prior to or during his hearing; and that his due process rights were further violated when, subsequent to affirmance by the Appeals Board, the DMV imposed a suspension of "at least 177 days" which was unconstitutionally vague. The court stayed the suspension and transferred the proceeding to this Court for substantial evidence review.
This Court has described substantial evidence as a "minimal standard," constituting a "low threshold," and requiring less than "a preponderance of the evidence, overwhelming evidence or evidence beyond a reasonable doubt" (Matter of Shuman v New York State Racing & Wagering Bd., 40 AD3d 385, 385 [1st Dept 2007] [internal quotation marks omitted]). "[A]s a burden of proof, it demands only that a given inference is reasonable and plausible, not necessarily the most probable," and "the courts may not weigh the evidence or reject the conclusion of the administrative agency where the evidence is conflicting and room for choice exists" (id. at 386 [internal quotation marks and emphasis omitted]). Petitioner acknowledges that substantial evidence is the standard of review in this case, but insists that it must be applied in light of the standard of review that the Administrative Law Judge was required to apply in the DMV proceeding. That standard was one of clear and convincing evidence (Vehicle and Traffic Law § 227[1]). In response, DMV cites Matter of Williams v Perales (156 AD2d 697 [2d Dept 1989]). In that case, which dealt with a violation of the rules governing food stamps, the court stated that "[a]lthough the applicable administrative standard of review in determining whether a local agency has established an intentional program violation is clear and convincing evidence,' the proper judicial standard of review of the Commissioner's determination is whether the determination is based on substantial evidence" (156 AD2d at 698 [internal citation omitted]).
This Court does not appear to have addressed the issue directly. However, other Second Department cases suggest that, notwithstanding Matter of Williams, the Appellate Division is not [*3]required to ignore the underlying standard of evidence when conducting a substantial evidence review pursuant to CPLR 7804(g). For example, in Matter of Kaplowitz v Jackson (267 AD2d 239, 239-240 [2d Dept 1999]), the Court, in finding that a determination by DMV that the petitioner was guilty of speeding was supported by substantial evidence, stated "that in finding clear and convincing evidence that a traffic infraction had been committed, the Administrative Law Judge properly relied upon the results of radar testing and upon the arresting officer's visual estimate of the speed of the petitioner's vehicle." Similarly, in Matter of Anthony Grace & Sons v New York State Dept. of Motor Vehs. (266 AD2d 284 [2d Dept 1999]), the Court held that "[t]he determination that there was clear and convincing evidence ... that the petitioner violated [the VTL] is supported by substantial evidence." Thus, while the appellate standard of review of substantial evidence requires great deference to findings that a hearing officer makes based on the evidence placed before it, it still calls for the reviewing court to ensure that such findings are not made in the absence of evidence that could, again with the proper amount of deference, reasonably be called clear and convincing.
Here, DMV was required to establish that petitioner violated Vehicle and Traffic Law § 1146(c)(1), which imposes liability on "[a] driver of a motor vehicle who causes serious physical injury as defined in article ten of the penal law to a pedestrian or bicyclist while failing to exercise due care." The referenced definition of "serious physical injury" includes "physical injury . . . which causes death," (Penal Law § 10.00[10]), which is presumably the basis for the charge against petitioner since he was not issued a summons until after the pedestrian died in the hospital. Thus, DMV was required to present clear and convincing evidence of both failure to exercise care and that such failure led to the pedestrian's demise. Petitioner claims that DMV failed in both respects. Regarding the accident itself, petitioner posits that the evidence was not clear and convincing that he failed to exercise due care, because it was equally plausible that the pedestrian, considering the lighting, the weather, and the hoodie and umbrella that may have obstructed his view, walked into the side of the bus. We reject this position. Under the substantial evidence standard of review, so long as there was some evidence that the Administrative Law Judge could have reasonably deemed to be clear and convincing proof that petitioner should have seen the pedestrian, we may not disturb the administrative finding. Based on the uncontested fact that the pedestrian had the right of way, and the testimony of an experienced accident reconstruction specialist that petitioner should have seen him and allowed him to proceed before he drove through the intersection, the Administrative Law Judge had ample evidence to find that petitioner failed to exercise due care.
With regard to the requirement that DMV establish serious physical injury, however, we find that there is not substantial evidence in the record to support the Administrative Law Judge's implicit finding that clear and convincing evidence existed that the accident caused the pedestrian's death. This conclusion does not require us to weigh evidence, determine witness credibility, or otherwise second-guess educated findings made by the Administrative Law Judge, all of which are prohibited under the substantial evidence standard of review (Matter of Shuman, 40 AD3d at 385). Rather, it is a recognition that the DMV presented no evidence at all tying the pedestrian's death to the injuries suffered by him in the accident, not even a death certificate. Viera, the only witness presented by DMV, presented no medical evidence whatsoever. He never stated that anyone medically qualified to do so told him that the pedestrian died because of his injuries, he merely stated that this was "determined." The only reference to a doctor in the investigative report he prepared merely states that a Dr. Carazas at St. Barnabas Hospital pronounced the pedestrian dead. Further, the investigative report Viera prepared stated that the pedestrian's injuries at the scene were not life threatening, and he imparted no knowledge about the severity of the injuries at any point before the death of the pedestrian, even admitting to not knowing what part of the pedestrian's leg was impacted by the bus. Thus, there was no basis for the Administrative Law Judge to even draw an inference that the pedestrian died as a result of his injuries.
The dissent states that "the record contains clear and uncontroverted evidence of how this accident occurred and the resulting serious injury sustained by the pedestrian," focusing on the statement in the initial accident report that the pedestrian was "pinned under the passenger side [*4]door [FN1] of the bus behind the front wheel." This, of course, ignores that DMV, at the hearing, did not proceed on the theory, much less offer any medical proof, that the pedestrian sustained "serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Penal Law section 10[12]). The dissent's approach further ignores that the Administrative Law Judge made no findings concerning whether the pedestrian sustained a "serious physical injury." In any event, even were it proper for this Court, in performing its review, to uphold the determination on a ground not pursued at the administrative level, we cannot disregard that petitioner testified that when he exited the bus after hearing a "thump," the pedestrian was "laying on the side of the tire, just behind the tire itself." This is not consistent with the notion that the pedestrian was "pinned," which would imply that the full, or a significant portion of, the weight of the bus had rendered the pedestrian's leg immobile. That would arguably imply a significant injury, but the evidence is not clear and convincing that this was the case. Thus, it is an open question how the pedestrian's leg was impacted. Without minimizing the potential for danger to an octogenarian who is hit by a bus, there is simply nothing in the record to suggest that the accident, even if it did not cause the pedestrian's death, satisfied the requirement that the pedestrian suffered "serious physical injury" as required by Vehicle and Traffic Law § 1146(c).
To be sure, one could speculate, as does the dissent, that the pedestrian suffered a "serious physical injury." But to engage in speculation would be to ignore the underlying standard of clear and convincing evidence, which even the dissent agrees applied in the administrative proceeding and is relevant to our review. "Clear and convincing evidence is evidence that satisfies the factfinder that it is highly probable that what is claimed actually happened . . . and it is evidence that is neither equivocal nor open to opposing presumptions" (Matter of Gail R. [Barron], 67 AD3d 808, 812 [2d Dept 2009][internal citations and quotation marks omitted]). Given that standard, and the remarkable lack of compelling evidence before us, we would be abdicating our role were we simply to defer to the conclusions drawn by the Administrative Law Judge, and raising a serious question as to the very purpose of having any appellate review in this matter.
Because we find that the Administrative Law Judge's determination was not supported by substantial evidence, we need not consider petitioner's argument that his due process rights were impaired or that the penalty was unduly severe.
All concur except Tom, J.P. and Andrias, J.
who dissent in a memorandum by Tom, J.P.
as follows:




TOM, J. (dissenting)


I agree with the majority's discussion of the interplay between our standard of review on appeal and the underlying clear and convincing standard in the DMV proceeding, and the majority's finding that petitioner violated Vehicle and Traffic Law § 1146(c)(1) by failing to exercise due care when he struck a pedestrian with his bus. However, I would find that substantial evidence in the record supports the Administrative Law Judge's finding that clear and convincing evidence existed that the accident caused the pedestrian serious physical injury. Accordingly, I respectfully dissent.
The decedent Julian Porres Mendez was struck and run over by a bus at the crosswalk at the intersection of Vyse Avenue and East 174th Street in the Bronx. Decedent was taken to St. Barnabas Hospital by EMS and died a few weeks later.
New York State Department of Motor Vehicles issued petitioner Wayne Seon (the bus driver) a summons for violating Vehicle and Traffic Law § 1146(c) for failing to "exercise due [*5]care to avoid colliding" with and causing a pedestrian to sustain "a serious physical injury."
The majority finds there was insufficient evidence to support a violation of section 1146(c) because "there is not substantial evidence in the record to support the Administrative Law Judge's implicit finding that clear and convincing evidence existed that the accident caused the pedestrian's death."
To sustain the Administrative Law Judge's finding we do not need to conclude that there was clear and convincing evidence before the agency that the collision caused the pedestrian's death or a substantial risk of death. Rather, under the statutory definition, it suffices where there is clear and convincing proof of the "protracted impairment of health or protracted loss or impairment of the function of any bodily organ."
Vehicle and Traffic Law § 1146(c)(1) provides in part:
"A driver of a motor vehicle who causes serious physical injury as defined in article ten of the penal law to a pedestrian . . . while failing to exercise due care . . . shall be guilty of a traffic infraction..."
Penal Law § 10.00(10) defines "serious physical injury" as:
" Serious physical injury' means physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ."
Clearly, then, serious physical injury may be proven by demonstrating that an injury either created a substantial risk of death or caused death, or caused protracted impairment of health or loss or impairment of the function of any bodily organ.
The majority's contention that the basis for the charge against petitioner was the death of the pedestrian is without merit. The record is bare of any evidence to support this supposition. The majority's conclusion that DMV charged petitioner under the death provision of the statute solely because the summons was served upon petitioner after the pedestrian's death is rank speculation and should be outright rejected. The evidence in this case clearly showed that DMV proceeded in its charge against petitioner under the entire provision of § 1146(c). In fact, petitioner was charged in the summons with violation of "section 1146(c)" and the Administrative Law Judge after a hearing found in his decision that petitioner "violated 1146(c) of the Vehicle and Traffic Law." There was no mention of pedestrian's death in the charge or the holding of the Administrative Law Judge. It is clear that the charge against petitioner and findings by the agency refer to section 1146(c) as a whole and did not focus on a particular definition of serious physical injury.
It should be noted that "[h]earsay evidence can be the basis of an administrative determination," including documentary evidence such as photographs, police accident and any police investigative reports (Matter of Gray v Adduci, 73 NY2d 741, 742 [1988]; see also Matter of Guarino v New York State Dept. Of Motor Vehs., 80 AD3d 697 [2d Dept 2011]; Matter of Fazzone v Adduci, 155 AD2d 540 [2d Dept 1989]). There is no requirement that a particular form of medical proof is needed to sustain a finding of a serious injury in this administrative hearing as urged by the majority. Further, given that hearsay evidence can be the basis of an administrative determination and may on its own constitute substantial evidence (see Matter of Cafe La China Corp. v New York State Liquor Auth., 43 AD3d 280, 281 [1st Dept 2007]), no particular type of evidence was required to be put forth at the hearing. Thus, it is inconsequential that the DMV presented no medical evidence or medical reports so long as testimony of witnesses, and police accident and investigative reports, meet petitioner's burden of proof. Here, the evidence clearly and convincingly supports the finding of a serious injury.
In this case, there was ample evidence to support the finding that decedent was struck and run over by a bus, and sustained a serious physical injury in conjunction with section 1146(c) under the clear and convincing standard of review by the Administrative Law Judge.
It appears that the majority is questioning whether the bus struck and ran over the pedestrian and whether he sustained a serious injury pursuant to Penal Law § 10.00(1) as a result of this accident.
Once again, the record contains clear and uncontroverted evidence of how this accident [*6]occurred and the resulting serious injury sustained by the pedestrian. Police Officer Casey prepared the accident report which was marked into evidence. The report states that the pedestrian was "pinned under the passenger side body of the bus behind the front wheel." In light of this evidence with no proof to the contrary, the majority continues to question whether the pedestrian was run over by and pinned under the front tire of the bus. The majority states the evidence is "not consistent with the notion that the pedestrian was pinned,' which would imply that the full . . . weight of the bus had rendered the pedestrian's leg immobile." Once again, the fact that the pedestrian was pinned under the front wheel of the bus was reported in the accident report by the police officer at the scene of the accident. The accident report was admitted into evidence without objection. Even the petitioner does not contest the pedestrian was pinned under the bus. Petitioner testified that as he was making a right turn he heard a "thump" in front of the bus. The thump sound was significant enough of an impact for him to immediately stop and exit the bus to investigate. Petitioner then testified that he observed the pedestrian "laying on the side of the tire, just behind the tire itself," which is consistent with the information in the accident report that the pedestrian was pinned behind the front tire. We can logically conclude that a person had to be first run over by a vehicle moving forward to be pinned under the back part of the front tire. Police Officer Charlie Viera, who investigated the accident, testified that, based on his investigation, including reports of the witnesses at the scene, the bus "struck the pedestrian with the front side of the bus, running over the legs of the pedestrian with the front passenger's side tire." In response to the Administrative Law Judge's question whether it was possible the pedestrian walked into the bus, Officer Viera, an accident reconstructionist, testified that it was the bus that struck the pedestrian.
The record also contains evidence to show by clear and convincing proof that the pedestrian sustained a serious injury. Police Officer Viera sets forth in his investigative report, also marked into evidence, that following the collision the pedestrian was admitted to St. Barnabas Hospital where a month later he died as a result of his injuries. The majority states that Dr. Carazas merely "pronounced the pedestrian dead." This is inaccurate. The investigative report also marked into evidence without objection provides that the pedestrian "died as a result of his injuries, pronounced by Dr. Carazas." Officer Viera testified that based on his investigation it was determined that decedent's death was caused by "complication from the collision of the accident." This was based on contact with the physician who pronounced Mendez dead as a result of his injuries.
Once again, section 1146(c) is not limited to death or a substantial risk of death but also applies to the "protracted loss or impairment of the function of any bodily organ." Whether the injured extremity was a leg or a foot, whether the injuries resulted in substantial risk of death or death, and whether additional complications occurred, any person, let alone an 88 year old, admitted to the hospital for a month based on injuries sustained after being run over and pinned under a bus, has suffered serious physical injuries. Moreover, before the bus ran over his extremities there was the impact of the bus slamming into the pedestrian's body causing a significant "thump" sound prompting the bus driver to stop the bus to investigate. Indeed, such injuries undoubtedly constitute a "protracted impairment of health or protracted loss or impairment of the function of [a] bodily organ" under section 1146(c)(1).
Notwithstanding the ample evidence submitted by respondent in support of its position, for the majority to raise the issue of whether the elderly pedestrian sustained a serious injury as a result of this horrific accident would defy logic and clearly life's realities. Here, the elderly pedestrian in this case would turn 90 years old in a little more than a year from the time of the accident. A city bus carrying 30 to 35 passengers struck him and ran over his legs, pinning him behind the right front tire of the bus. It would be a miracle even for a young, healthy person not to sustain a serious injury under such circumstances, and for a person of the decedent's age, serious injury would be inescapable. A person of such advanced age would most likely sustain a serious injury even by an accidental fall without the impact of a city bus striking and running over him. The pedestrian was immediately transported to St. Barnabas Hospital where he remained for one month before his death. We should be mindful that this is an administrative hearing and not a judicial trial on the merits where the rules of evidence are strictly adhered to. [*7]The above factual scenario together with the accident report, the investigative report and the testimony of Officer Viera and petitioner clearly and convincingly proved that the bus struck and ran over the pedestrian causing him at a minimum to sustain a serious injury of a "protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Penal Law § 10.00[10]; Vehicle and Traffic Law § 1146[c]). To hold otherwise would make our appellate review process illogical, unsound and contrary to the law concerning administrative hearings.
Therefore, I would confirm respondents' determination, including the penalty, and deny and dismiss the petition.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MARCH 29, 2018
DEPUTY CLERK




Footnotes

Footnote 1:The dissent reads the narrative in the report as stating ". . . passenger side body of the bus . . ." The narrative is handwritten and the word is admittedly not readily discernable.