■ In the Matter of CHRISTOPHER SCULLY, Petitioner, v HOWARD SAFIR, as Police Commissioner of the City of New York, et al., Respondents. [723 NYS2d 451] —Determination of respondent Police Commissioner, dated June 24, 1999, to the extent that it adopted the report and recommendation of Administrative Law Judge (ALJ) Charles Fraser, dated January 27, 1998, finding petitioner police officer guilty of wrongfully and without just cause using excessive force, and imposed a penalty of forfeiture of 30 vacation days, unanimously annulled, without costs, and the petition (transferred to this Court by order of the Supreme Court, New York County [Diane Lebedeff, J.], entered December 27, 1999) granted.

The question here is whether there is substantial evidence, i.e., "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (*300 Gramatan Ave. Assocs. v State Div. of Human Rights*, 45 NY2d 176, 180), to support the Commissioner's determination that petitioner Police Officer Christopher Scully wrongfully and without just cause used excessive force against complainant Damien Harrington in the course of arresting him on the evening of March 25, 1996, outside the Soundview Community

Center in the Bronx. Our exhaustive review of the record reveals that there is not a scintilla of evidence to support the determination. We can find no rational basis for it (*id.* at 182).

Harrington himself testified that he could not identify petitioner as the officer who pressed a forearm against his neck and slapped him once across the face before placing him in the back seat of an unmarked car and getting into the front seat. He described that officer as a Latino with a mustache who was wearing plain clothes. It is undisputed that petitioner is not Latino and was clean shaven and wearing a full standard police uniform during the incident. Accordingly, the ALJ found that Harrington's description of the officer who struck him in the course of arresting him "simply does not fit Officer Scully, who is blond, has a slighter build, is not Hispanic, has never worn a mustache, and was wearing a standard uniform, not a raid jacket."

The ALJ found that Harrington's description of the officer who slapped him across the face "very accurately described" Officer Velez, who is Hispanic, has a black mustache and was wearing a raid jacket during the incident. However, he concluded: "Officer Velez was the driver of the unmarked car that Mr. Harrington was put into, and therefore it is certain that Mr. Harrington saw him on March 5, 1996. *It is my conclusion that Mr. Harrington accurately described his interaction with Officer Scully, while incorrectly remembering the officer with whom he had that interaction—although I acknowledge that this conclusion would have been more obvious had the other civilian witnesses clearly supported the Department's identification of Officer Scully*" (emphasis added).

The civilian witnesses provided what the ALJ called "no better than equivocal support" for the Police Department's identification of petitioner as the officer who struck Harrington while arresting him. Witness Anthony Hilliard testified that the officer was white, but that he would not recognize him if he saw him, and he could not identify petitioner, who was sitting a few feet away in the courtroom. Witness Darral McQuitter testified that the officer was black. Both witnesses testified that the officer was in plain clothes.

The ALJ characterized Harrington's own identification of petitioner at trial as "notably weak." He pointed out that, although initially Harrington identified petitioner in the courtroom, he later admitted that he did not know if it was petitioner who slapped him in the course of the arrest, and that, moreover, Harrington's description did not fit petitioner but did fit Officer Velez. And yet, "notwithstanding the weak-

ness of the identification of Officer Scully by the Department's witnesses," the ALJ found that it was petitioner who slapped Harrington across the face, because police officers on the scene, including petitioner himself, testified that petitioner was the only officer who had any contact with Harrington before he was placed in the unmarked car. Moreover, the ALJ found that Harrington's account was "credibly corroborated" by witnesses Hilliard and McQuitter, who "both testified that they saw *an officer* slap Mr. Harrington in the face" (emphasis added). Thus, although Harrington failed to identify petitioner as the officer who slapped him, and neither Hilliard nor McQuitter could identify petitioner as the officer who slapped Harrington, and although it is undisputed that petitioner was in uniform and Harrington, Hilliard and McQuitter all testified that the officer was in plain clothes, the ALJ concluded that Harrington's account that petitioner slapped him was corroborated by Hilliard and McQuitter. In fact, Hilliard and McQuitter corroborated Harrington's account that the officer who slapped him looked nothing like petitioner. Far from being obvious, the ALJ's conclusion that Harrington "accurately described his interaction with Officer Scully, while incorrectly remembering the officer with whom he had that interaction" is baffling.

Petitioner testified that he arrested Harrington "without incident, without any force," escorted him to the unmarked car, which was parked in front of petitioner's van, and returned to his van.

Harrington testified that, after slapping him, the Latino officer escorted him to an unmarked car, placed him in the back seat, and got into the front seat. He testified that a black officer whom he identified as Officer Taylor sat next to him in the back seat and punched him six or seven times in the face and ear, causing his mouth to bleed and his ear to hurt.

The ALJ found that Harrington's account of the force used against him in the car was "probably exaggerated." "It seems unlikely that he was punched in the face, full force with a closed fist, half a dozen times or more. The objective evidence—the medical records and the photographs—did not clearly prove more than two blows: a slap to the side of Mr. Harrington's face, covering his ear, causing the documented injury to his ear; and a blow to his mouth, causing swelling to Mr. Harrington's lower lip and a cut or scrape on the inside of his mouth" (footnote omitted).

Moreover, the ALJ found that, although it was "more probable than not" that Harrington was struck once in the mouth while in the unmarked car, and although he "clearly attributed

the blow to his mouth to Officer Taylor, not to Officer Scully," the evidence was insufficient to prove that it was Officer Taylor who struck him. He concluded that in any event it was petitioner who caused the injury to Harrington's ear:

"Mr. Harrington indicated that Officer Scully hit him only one time, a slap to the right side of his face. If Officer Scully's open hand covered Mr. Harrington's ear, that slap may well have caused the ear injury * * *

"[I]t is quite likely that Officer Scully's slap to the side of Mr. Harrington's face was the cause of the injury to Mr. Harrington's ear, apparently including the rupturing of his eardrum."

Thus, although in fact neither Harrington nor any other witness indicated that petitioner slapped Harrington, and the officer who slapped Harrington was in the unmarked car, while petitioner drove another vehicle (the ALJ specifically credited this evidence), and Harrington testified that his mouth began to bleed and his ear began to hurt after Officer Taylor punched him, the ALJ concluded that petitioner's slap to Harrington's face caused his ear injury.

The irrationality of this conclusion did not go unrecognized by the Police Department personnel who reviewed the ALJ's report and recommendation. In post-trial internal department proceedings pursuant to *Fogel v Board of Educ.* (48 AD2d 925 [respondent must provide petitioner with reasonable opportunity to respond to findings of hearing officer before respondent takes further action]), the Commissioner received adverse comments on the sufficiency of the evidence from the department attorney who prosecuted the case against petitioner, David H. Pincus, and from First Deputy Commissioner Patrick E. Kelleher, as well as from petitioner. Pincus stated flatly that "the Department was unable to establish that Officer Scully caused complainant's injury." Kelleher wrote that "the testimony lacked sufficient detail and conviction so as to be of much assistance [sic] to the trier of fact as to who actually struck the complainant and caused the alleged injuries."

While we recognize that our review powers are severely restricted with respect to an administrative agency determination, we are nevertheless charged with insuring that an agency meet the very minimal evidentiary requirement necessary to uphold its determination. This is a rare case that utterly fails to satisfy the substantial evidence standard. No matter how liberally construed, no evidence cannot be equated with substantial evidence. Concur—Nardelli, J. P., Williams, Ellerin, Wallach and Friedman, JJ.