■ In the Matter of VICTOR RODRIGUEZ-RIVERA, Petitioner, v RAYMOND KELLY, as Police Commissioner of the City of New York, et al., Respondents. [771 NYS2d 3]—

Determination of the respondent Police Commissioner, dated January 26, 2002, finding petitioner police officer guilty of certain specifications charging him with failing to render all necessary police services and imposing a penalty of forfeiture of 15 vacation days, annulled, without costs, and the petition (transferred to this Court by order of the Supreme Court, New York County [Robert Lippmann, J.], entered August 15, 2002) granted.

It is well settled that judicial review of a determination made by an administrative agency is limited to a consideration of whether such determination was supported by substantial evidence (*see 300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 181 [1978]; *Matter of Wagner v Kerik*, 298 AD2d 322 [2002]). Substantial evidence has been defined as "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (*Matter of Berenhaus v Ward*, 70 NY2d 436, 443 [1987] [internal quotation marks and citations omitted]). Our review of the record in the instant matter, however, reveals no such substantial evidence to support the Commissioner's determination that petitioner: (1) failed to render all necessary police service to the complainant Anne B. (Ms. B.) in response to her allegations that she had been sexually assaulted at the 2000 Puerto Rican Day parade; and (2) failed to report this complaint to his patrol supervisor in violation of departmental rules and procedures. Our examination of the relevant testimony elicited at trial fails to meet the requisite minimal evidentiary requirement necessary to uphold

the Commissioner's determination and the penalty imposed (*see* *Matter of Scully v Safir*, 282 AD2d 305, 308 [1st Dept 2001]).

At the administrative hearing, petitioner, a male Hispanic, testified that he is a six-year veteran of the New York Police Department assigned to the Manhattan Traffic Task Force. He further testified that on the date in question he was assigned to a three-wheeled scooter and aided a woman sexually assaulted by the unruly parade crowd, but denies being approached by Ms. B. or her former boyfriend Patrick Orlando (Orlando) at 59th Street and Sixth Avenue.

Ms. B. testified that on June 11, 2000, she and Orlando were at Central Park as the Puerto Rican Day parade was winding down. As they proceeded to the park entrance at Sixth Avenue and Central Park South, Ms. B. became separated from Orlando by the disorderly parade crowd. She then found herself surrounded by a large group of Hispanic men and women, who doused her with beer and water, threw her to the ground, pulled her pants down and groped her. Ms. B. further testified that, upon being reunited with Orlando, she approached a uniformed police officer, who was sitting in an enclosed police scooter at 59th Street and Sixth Avenue, and she recounted the details of her attack. Ms. B. testified that the police officer was unresponsive, failed to take a report and drove off. The next day, Ms. B. stated that she filed a report at a midtown precinct. Although Ms. B. identified petitioner at trial as the officer on the scooter, Ms. B. conceded to a police investigator two days after the incident that she was unable to identify the officer on the scooter, stating that all police officers look alike. Subsequently, Ms. B. was shown six photo arrays of the possible scooter officer, but again she was unable to identify petitioner, whose photograph was included in each array, as the scooter officer. Moreover, she expressly excluded petitioner as a possibility. Although Ms. B. eventually described the officer in the scooter as a male wearing a blue uniform who had "skin color representing somewhere between white and Hispanic, possibly Italian," she admitted in the course of the investigation that she has "a hard time describing accurately between white and Hispanic" and that she could no more describe the officer in question "than fly to the moon." No other definitive physical description of the officer on the scooter was offered by Ms. B. It is noteworthy that petitioner has a distinctive handlebar moustache, which he had at the time of the incident.

Despite petitioner's unique physical appearance, Orlando was unable to identify petitioner both in court and when he was shown a series of photo arrays. He testified that the scooter offi-

cer was a male Caucasian in his late thirties to early forties with graying hair. As with Ms. B.'s description, Orlando did not definitively indicate that the scooter officer in question had a mustache. Orlando also testified that the scooter in question may have had three wheels, but he was uncertain. We find that the Assistant Deputy Commissioner (ADC) improperly credited Orlando's testimony in determining the identity of the scooter officer, particularly in light of the fact that Orlando initially told investigators that the scooter officer listened to Ms. B.'s complaint, spoke on his radio, directed Ms. B. and Orlando to a nearby police van and then took off in the general direction of the scene where Ms. B. was assaulted. We also find irrational the determination of the ADC that Orlando's testimony was devoid of any motive to fabricate given the close nature of his relationship with Ms. B. and the conflicts in his testimony.

Upon viewing a series of photo arrays, Johnnyray Gasca, an eyewitness to the assaults taking place in the vicinity of Ms. B.'s attack, expressly eliminated petitioner as the scooter officer and affirmatively selected a photograph of another individual as the scooter officer in question. Although Gasca is a convicted felon with questionable veracity, we find that his failure to select petitioner's photograph from an array is significant inasmuch as it serves to exonerate petitioner, especially since Ms. B. and Orlando both failed to identify petitioner from the photo arrays.

Police Officer Ernest Enea (Enea) testified that the area of 59th Street and Sixth Avenue was so heavily congested with traffic and pedestrians that the street was "lost." Enea stated that he encountered petitioner and his scooter near 59th Street and Sixth Avenue where he saw petitioner take prompt action coming to the aid of a naked female tourist, later identified as Sophie T. (Ms. T.), who was sexually assaulted by the parade crowd. Enea testified that petitioner covered Ms. T., escorted her and her husband into a nearby police scooter, pushed away the riotous crowd and radioed for police assistance and an ambulance. Although Enea's testimony places petitioner in the vicinity of the alleged assault, Enea stated that, in the midst of all the chaos, he did not see Ms. B. or Orlando approach petitioner's scooter. We find it incomprehensible that the ADC failed to accept the overriding exculpatory nature of Enea's testimony and failed to credit Ms. B.'s identification of Enea as a possible suspect from the photo arrays. We also find it improbable that after placing himself in jeopardy by heroically protecting Mr. and Mrs. T. from the rioting mob, that petitioner would fail to offer police protection to another victim of the crowd's sexual assaults.

Internal Affairs Bureau investigator Christopher Biddle testified that he reviewed the roster of scooters assigned to petitioner's precinct on the day of the parade. Biddle testified that four male non-African-American officers were assigned three-wheeled scooters from the Manhattan Traffic Task Force: petitioner, Officer Cruz, Officer Pacheco and Officer McKenna. He also stated that it was possible that another officer, Officer Fiorelli, may have been assigned to a three-wheeled scooter on the day of the parade, but Biddle admitted that some of the reports from the officers' departmental interviews failed to indicate whether they were assigned to a two-wheeled or three-wheeled scooter. In reviewing these flawed reports from each of these aforesaid officers' departmental interviews, Biddle stated that although Officers Cruz; Pacheco and McKenna were in the approximate vicinity, each denied being the scooter officer who encountered Ms. B. and Orlando at the parade. Biddle further stated that both petitioner and Officer Pacheco, who are both physically similar, were each responding to traffic conditions at 59th Street and Sixth Avenue. Although Biddle conceded that, even with the aid of these deficient departmental reports, there was no precise way of knowing where every police officer assigned to a scooter was at any one particular time in the course of the escalating pandemonium, he ultimately identified petitioner as the scooter officer solely in light of Officer Pacheco's statement in his own departmental interview that he was approaching the scene by a different route than the one used by Ms. B. and Orlando. We find that reliance upon this type of testimony does not establish petitioner's identity as the scooter officer by the requisite substantial evidence standard.

While we agree with the dissent's contention that, in the context of a CPLR article 78 proceeding, our review powers are severely limited when dealing with the issue of a witness's credibility, "we are nevertheless charged with insuring that an agency meet the very minimal evidentiary requirement necessary to uphold its determination" (*Matter of Scully v Safir, supra* at 308 [Commissioner's credibility determinations were unsupported by substantial evidence]). The evidence in the instant matter falls far short of reaching this standard. Concur—Nardelli, J.P., Ellerin and Lerner, JJ.

Tom and Friedman, JJ., dissent in a memorandum by Friedman, J., as follows: In annulling the subject determination of respondent Police Commissioner, the majority seems to conduct a de novo review of the hearing evidence, and to substitute its own findings of fact and credibility determinations for those adopted by the Commissioner. While there is no question that

there are credibility issues relating to some of the Police Department's witnesses, the approach adopted by the majority is one the Court of Appeals has instructed us not to take in reviewing the determinations of administrative agencies. Accordingly, I respectfully dissent.

Petitioner police officer was charged with having failed to render all necessary police service to a female civilian (B.) who approached an officer on June 11, 2000 to complain that she had just been sexually abused by a group of young men in Central Park during the 2000 Puerto Rican Day parade. B. and Orlando, a male friend who was with her at the time, testified that B. approached a white (non-African-American) police officer riding a scooter westbound on 59th Street, just east of the intersection with Sixth Avenue, and complained to the officer that a group of men had just attacked her in the park. B. and Orlando further testified that the officer failed to respond to B.'s complaint in an appropriate fashion. In addition, Orlando recalled that the scooter the officer was riding had three wheels. Officer Ernest Enea gave eyewitness testimony placing petitioner, on a three-wheeled scooter, at the intersection of Sixth Avenue and 59th Street just after the approximate time of B.'s complaint. Enea further testified that petitioner was the only officer he observed on a three-wheeled scooter in the vicinity in the relevant time period. Sergeant Christopher Biddle testified, based on his review of departmental duty rosters and other records, that petitioner was the only non-African-American officer on a three-wheeled scooter whom B. could have encountered riding westbound on 59th Street toward Sixth Avenue at the approximate time she made her complaint. The Trial Commissioner found, based on the foregoing testimony, that petitioner was the officer to whom B. made her complaint. The Commissioner approved the Trial Commissioner's findings and his recommendation for the disposition of the charges.

Although the majority does not dispute that the Trial Commissioner had a reasonable basis for concluding that the officer who received B.'s initial complaint committed an infraction by failing to respond appropriately thereto, it finds that the evidence was insufficient to establish that petitioner was that officer. In reaching this conclusion, the majority dwells on what it perceives to be weaknesses in the Department's case against petitioner, including certain evidence (such as B.'s courtroom identification of petitioner) on which the Trial Commissioner placed little or no reliance in reaching his conclusions. The majority also disagrees with certain of the Trial Commissioner's credibility determinations, such as his decision to credit the

testimony of Orlando and Biddle. Although the majority seeks to couch its opinion in the appropriate procedural terminology, it in fact conducts a plenary review of the evidence, in which it makes its own credibility determinations and its own findings of fact.

The majority's approach is out of place in a review, pursuant to CPLR article 78, of the duly rendered determination of an administrative agency. In such a review, the question before us is not whether, based on the same record, we would make the same findings of fact or credibility determinations as did the agency, nor is it whether the agency's conclusions comport with what we might regard as the weight of the evidence. To the contrary, this Court has neither the "power to upset the determination of an administrative tribunal on a question of fact" nor the "right to review the facts generally as to weight of evidence" (*Matter of Pell v Board of Educ.*, 34 NY2d 222, 230 [1974] [internal quotation marks and citations omitted]; *see also Matter of Kelly v Safir*, 96 NY2d 32, 38 [2001] ["The Appellate Division's fact-review powers of an administrative agency determination are limited to whether substantial evidence supports the determination"]). The Court of Appeals has defined "substantial evidence" as "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (*300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 180 [1978]), and, if we can discover somewhere within the record "a rational basis . . . for the findings of fact supporting the agency's decision" (*id.* at 182, quoting McCormick, Evidence § 352, at 847 [2d ed]), the agency's determination must be confirmed. Further, an administrative agency's determinations concerning the credibility of witnesses who have testified before it at an evidentiary hearing are "largely unreviewable by the courts" (*Matter of Berenhaus v Ward*, 70 NY2d 436, 443 [1987]). In sum, "[w]here there is a conflict in the testimony produced . . . [and] where reasonable [people] might differ as to whether the testimony of one witness should be accepted or the testimony of another be rejected, where from the evidence either of two conflicting inferences may be drawn, the duty of weighing the evidence and making the choice rests solely upon the [administrative agency]. The courts may not weigh the evidence or reject the choice made by [such agency] where the evidence is conflicting and room for choice exists" (*id.* at 443-444, quoting *Matter of Stork Rest. v Boland*, 282 NY 256, 267 [1940]).

Although one could reasonably disagree (as the majority does) with the findings of fact made by the Trial Commissioner in

this case, I do not believe that those findings, based on the evidence previously summarized, can be said to lack any rational basis in the record. This simply is not the "rare case" in which the agency's determination can be said to be supported by literally "no evidence" (*Matter of Scully v Safir*, 282 AD2d 305, 308 [2001]). Accordingly, I would confirm the determination under review and dismiss the petition.