[887 NYS2d 486]

# In the Matter of ROBERT T for Reinstatement of his Pistol Permit.

County Court, Dutchess County, September 22, 2009

## APPEARANCES OF COUNSEL

*Lee David Klein*, Poughkeepsie, for applicant. *William V. Grady, District Attorney*, Poughkeepsie (*Richard W. Fiorile* of counsel).

## OPINION OF THE COURT

GERALD V. HAYES, J.

In June 1997, the District Attorney made application to revoke the pistol permit of Robert T on the ground that he was being treated for a psychiatric illness.

After numerous conferences and adjournments (including a one-year adjournment), on December 18, 2000, Judge Marlow signed an order revoking the permit.

The order also provided that Robert T could apply for a new permit no sooner than 30 months from that date.

He has now reapplied.

In support of his application, he has submitted a memorandum from his psychologist which states:

"I am a psychologist who has been treating (Robert T) since September 27, 2001. He has asked me to write to you regarding his condition, our treatment and his medication compliance. During this time, (Robert T) has not experienced any psychotic episodes. Indeed, our treatment has focused on maintaining his stable condition rather than treating any acute symptomatology. He has been an active and cooperative participant in his treatment and has attended as scheduled. Throughout his treatment, (Robert T) has been prescribed psychotropic medications. From my observation, he has consistently taken these medications as prescribed. While many patients stop their medications due to unpleasant side effects, (Robert T) appears to have suffered none of these. He views these medications as critical for maintaining his mental health."

As part of the application process, I interviewed Robert T in the presence of his attorney.

Robert T reported that he has been a member of a fish and game association for more than 40 years and explained various reasons why he wanted to reobtain a pistol permit.

As to the issue of mental illness, while Robert T acknowledged that his psychologist was saying essentially that he has a psychiatric disorder which is under control because of the medication and psychotherapy sessions, he also stated that he hasn't suffered any symptom for 11 or 12 years and takes his medication religiously.

Robert T is on a disability retirement from the United States Postal Service.

The District Attorney opposes the application on two grounds:

(1) that Robert T has been diagnosed with a mental illness and is ineligible for a permit pursuant to Penal Law § 400.00 (citing *Matter of David H.*, 96 Misc 2d 117 [1978]), and

(2) that Robert T's possession of a firearm would be illegal pursuant to 18 USC § 922 which provides in part that firearms may not be sold to or received by one who has been committed to a mental institution.

## Discussion

Federal Law

The issue of federal law is the easier of the two to resolve.

In *Carnohan v United States* (2006 US Dist LEXIS 92532 [SD Cal 2006], *affd* 296 Fed Appx 603 [2008]) it was held that the alcohol, tobacco products and firearms regulation (27 CFR 478.11 [d]) associated with implementing 18 USC § 922 (g), criminalizing possession of a firearm by a person who has been committed to a mental institution, defines the term to encompass only involuntary commitments:

> "Committed to a mental institution. A formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes a commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution." (27 CFR 478.11 [d].)

Persons in a mental institution for observation or on a voluntary basis are not within the purview of the federal statute. (*United States v Dorsch*, 363 F3d 784 [8th Cir 2004].)

Therefore, Robert T's voluntary stay at the New York Hospital-Cornell Medical Center in 1994 does not constitute a commitment within the purview of 18 USC § 922 (g).

State Law

Both counsel have addressed the decision in *Matter of David H.* (96 Misc 2d 117 [1978]).

In that case, David H. had contacted a hospital as an outpatient during the dissolution of his marriage. He was treated by a psychiatric team, and, on recommendation of the psychotherapist, voluntarily admitted himself. He was discharged two weeks later and continued for six more visits as an outpatient.

The psychotherapist testified at the pistol permit revocation hearing that he viewed David H.'s problem as more of an emotional disturbance than a mental illness. In the psychotherapist's view, it was a reactive depression to marital maladjustment which is much different than a disease like schizophrenia.

The court held that David H. had been treated for a mental illness as that term was defined in the Mental Hygiene Law.

Although David H. had been discharged from care and could function without care or medication, the court held that "the statute renders ineligible anyone who has ever suffered any such illness and that mental capacity at any subsequent time is irrelevant." (96 Misc 2d at 118-119.)

The court in *David H.* seemed to be expressing some reluctance in revoking the permit but believed such a result was compelled by the wording of Penal Law § 400.00 (1) (d) which refers to anyone who "has ever suffered any mental illness or been confined to any hospital or institution, public or private, for mental illness."

Robert T's attorney argues that Penal Law § 400.00 (1) (d) should not be interpreted to mean that any person who has been treated for a mental illness is automatically ineligible to obtain a pistol permit.

That statute provides:

"1. Eligibility. No license shall be issued or renewed pursuant to this section except by the licensing officer, and then only after investigation and finding that all statements in a proper application for a license are true. No license shall be issued or renewed except for an applicant (a) twenty-one years of age or older, provided, however, that where such applicant has been honorably discharged from the United States army, navy, marine corps, air force or coast guard, or the national guard of the state of New York, no such age restriction shall apply; (b) of good moral character; (c) who has not been convicted anywhere of a felony or a serious offense; (d) who has stated whether he or she has ever suffered any mental illness or been confined to any hospital or institution, public or private, for mental illness."

Robert T's attorney argues that the statute simply provides that the applicant state whether he or she has ever suffered from a mental illness and that it is then the obligation of the licensing officer to evaluate the information and determine whether the license should be issued.

There is some support for that view.

In a book written by Lee O. Thomas and Jeffrey Chamberlain[1] entitled Gun Control in New York: A Guide to New York's Firearms and Weapons Laws (1990) they state (at 58-59):

"The third criterion of eligibility requires that an applicant reveal if he has been treated, confined, etc., by or in a mental health treatment facility. Such an admission does not necessarily preclude the issuance of a license. The statute requires only that you inform the licensing officer of your mental health history as part of the license application process. Any determination relating to the mental fitness of the applicant concerned is a judgment call and is the responsibility of the licensing officer."

In a later book, Firearms and Weapons Laws: Gun Control in New York (1998), the same authors make reference to the decision in *David H.*

"In one curious case, the licensing officer ruled that any psychiatric or psychological history required that a license application be denied. In this case, the applicant had seen a psychiatrist for depression after his marriage broke up, but there was no evidence that this episode had anything to do with his fitness for the license applied for. The statute requires only that an applicant 'state' whether he has ever been treated for mental illness. Thus, the better view, consistent with the terms of the statute, is that the issuing officer should consider the psychiatric or psychological history of an applicant on a case by case basis" (at 111).

A literal reading of Penal Law § 400.00 (1) (d) (leaving out paragraphs [a], [b] and [c]) would be: No license shall be issued or renewed except for an applicant who has stated whether he or she has ever suffered any mental illness or been confined to any hospital or institution, public or private, for mental illness. The statute does not specifically state that a person with a mental illness is automatically disqualified from obtaining a permit, although the court in *David H.* found that to be the intent of the statute.

By the time of the hearing with respect to the revocation of his permit, David H. had been discharged from care and could

---

1. Lee O. Thomas was a New York State Police lieutenant who had administered the pistol license permit section for more than 20 years. Jeffrey Chamberlain was an attorney who, at one time, was Chief Counsel to the New York State Police and had worked with Lieutenant Thomas in drafting and interpreting New York's gun control laws.

function without care or medication. The court found no evidence that he was in other than good mental health at the time of the hearing. Nevertheless, the judge, because of his interpretation of the statute, believed he was constrained to revoke the permit rather than to evaluate David H.'s condition and make a determination of his eligibility on the merits of his situation.

In revoking David H.'s permit, the court noted in conclusion that "since the condition is so common, and the practice of seeking treatment so commendable and so readily available, it might well be that the Legislature should consider this issue." (96 Misc 2d at 119.)

The Legislature has not amended or modified the statute, and there is no reported decision agreeing or disagreeing with the holding of *Matter of David H.*

The District Attorney points out that, during this past legislative session, the New York State Assembly passed a bill revising Penal Law § 400.00 (1) (d) by deleting the phrase "who has stated whether he or she has" and making ineligible for a pistol permit any person "who has . . . ever suffered any mental illness." (2009 NY Assembly Bill A3076-B § 1.)[2]

The District Attorney argues that this change demonstrates that the Legislature is attempting to create tighter restrictions on gun licensing.

Perhaps more telling, however, is the apparent recognition by the Assembly that the current Penal Law section does not per se prohibit any person who has suffered a mental illness from obtaining a permit; it simply requires an applicant to state whether he has ever suffered from a mental illness.

If the present statute did in fact make ineligible anyone who has ever suffered from a mental illness, then the amendment passed by the Assembly would not be necessary.

I must respectfully disagree with the interpretation of the statute in the *David H.* decision.

The statute does not state that anyone who has suffered from a mental illness is automatically and forever ineligible to obtain a permit.

I agree with the Thomas-Chamberlain view of the statute: that the applicant must disclose any mental health history and that the licensing officer must consider the history and determine whether, in that particular case, a permit should be issued.

---

**2.** The bill has not been acted on by the Senate.

I find, therefore, that Robert T is not ineligible as a matter of law to obtain a pistol permit.

Whether or not the permit should actually be issued will depend on a variety of factors, including:

(1) An updated criminal history report which has already been obtained by the Dutchess County Sheriff. Robert T has never been arrested.

(2) An updated report from Robert T's psychologist.

(3) A consideration of what restrictions should be imposed in the exercise of a permit (e.g., target shooting only).

(4) A consideration of what restriction should be imposed on the continuation of the permit (e.g., subject to periodic reports from the psychologist).

(5) Any other relevant information provided by the attorneys.

The attorneys should consult with each other and the Court Clerk and schedule a further conference.