OPINION OF THE COURT
W. Patrick Falvey, J.
*1083 The respondent was issued a license (CW 7719) to carry a pistol on June 9, 1977. The license was subject to several amendments over the years. It is noted that, other than the current matter before the court, the licensee has had no other issues regarding the use of any firearms or his license; nor does he have any other contacts with the criminal justice system.
The court was advised by the Yates County Sheriff on July 18, 2012 that on July 17, 2012 the respondent had been charged in the Town of Torrey with the misdemeanor of reckless endangerment in the second degree (Penal Law § 120.20) resulting from his shooting of a dog while its owner was attempting to stop it from fighting.
The court, by order to show cause dated July 24, 2012, suspended respondent’s pistol permit, and ordered surrender of his permit and all weapons on said permit to the Yates County Sheriff pending further order of the court. The respondent and his counsel appeared before the court on August 21, 2012 and requested a hearing. The hearing was adjourned to await the results of the criminal charges pending in the Town Court.
The Town of Torrey Justice Court entered a six-month adjournment in contemplation of dismissal (ACD) pursuant to Criminal Procedure Law § 170.55 with the consent of the District Attorney’s office and defendant on October 24, 2014. The conditions of the ACD were that the licensee was to avoid any violation of the law and make restitution to the owner of the dog he shot within 30 days of the October 24, 2014 order. The case was subsequently dismissed pursuant to the ACD.
A hearing was commenced January 26, 2015, continued and completed on March 31, 2015.
The licensee presented proof consisting of his own testimony, as well as that of Linda Merritt, Ronald H. Merritt, Christopher Velez and Guy Anthony Rossi. The court also took testimony of Yates County Deputy Sheriff Kevin Crowfoot, who investigated the incident. Several photos were also submitted into evidence along with a street map, aerial photo, Finger Lakes Health medical report regarding Linda Merritt, who was injured during the incident, a Federal pistol ammunition box, and résumés of witnesses Velez and Rossi, who were called as expert witnesses by respondent. Other evidence consisted of the information dated May 20, 2013; written statements of Daniel Mitchell (dated July 15, 2012), Kyle Pallischeck (dated July 15, 2012), Eric Hessney (dated July 15, 2012) and Linda Merritt (dated *1084 Aug. 2, 2012); letter of Sheriff Ronald G. Spike (dated July 18, 2012); Deputy Crowfoot’s arrest report; sheriff police report animal/dog (dated July 15, 2012); uniform traffic tickets; and Yates County Sheriff complaint summary report and photos (exhibit 20). The court has also taken judicial notice of the contents of the licensee’s pistol permit file.
The proof shows that the licensee, 62 years of age, was in bed reading, in his home at 67 Cornelia Street, Village of Dresden, on July 15, 2015 between 7:45 p.m. and 8:00 p.m. when he heard screaming. At first he thought it was kids at the bathing beach, but then the screams went on and on, and it sounded like adults screaming, so he got up and looked out the window. It was still light out. The sun was up. When he looked down Bogart Street he saw a “commotion.” He got dressed and took his .38 caliber revolver, believing an assault was occurring. He saw no police vehicle at the scene. He drove his car down Bogart Street to the scene where he observed a 64-year-old woman, whom he later learned was Mrs. Merritt, screaming while holding the leash of a 20-pound beagle, which was also screaming. He observed that a dog four to five times the size of the beagle was attacking the beagle. The larger dog’s jaws were locked on the beagle’s upper back at the base of the neck and the beagle was bleeding. According to the proof, Mrs. Merritt was disabled with autoimmune fibromyalgia, causing her muscular aches and pains. The leash was wrapped around Mrs. Merritt’s wrist and she could not remove the leash due to the tension on the leash during the attack. The tight leash on her wrist was causing pain and injury to her wrist, for which she later sought medical attention. The larger dog’s leash was wrapped around Mrs. Merritt’s right foot.
The licensee got out of his car with his pistol. He observed the larger dog’s owner trying to separate the two dogs, without success. Mr. Hessney believed from his observations that the larger dog was killing the beagle, and Mrs. Merritt was also in danger. When Hessney first approached the larger dog he told the dog’s owner to move back because he had to shoot the dog. The owner said “no.” Mr. Hessney then struck the large dog on the head several times with the butt of his pistol, which did not stop the attack. He then again told the owner of the larger dog to move back, which the owner did.
Mr. Hessney decided to shoot the larger dog, concluding that the larger dog was killing the beagle, and after it killed the beagle, Mr. Hessney, being familiar with dogs, was afraid that *1085 the dog would attack somebody else in the area. So, he shot the larger dog, holding the pistol close to vertical, pointing it at the dog’s head with the gun’s muzzle six inches or less away from the larger dog’s head. The larger dog’s owner was also nearby holding its head. The pistol was loaded with Federal HydraShok .38 caliber 129 grain, or “hollow point” bullets. Hessney knew this ammunition is a self-defense load, developed for police use, designed not to fragment when it enters a human body, and not to penetrate walls and ricochet. The larger dog released the beagle from his mouth when he was shot. Hessney stated that he acted as he did out of concern for the safety of the people that were around. The licensee called 911 to report the incident upon returning home, as did Mrs. Merritt, who then took her dog to a veterinarian. The larger dog was also taken to a veterinarian. Deputy Crowfoot responded and conducted an investigation.
Christopher Velez, a part-time Steuben County Sheriff Avocational and Specialized Deputy, and part-time Wayland Police Officer, who is also a licensed gunsmith, dog trainer and chief instructor for the Cujo Cop Training Services, which specializes in canine behavioral modification training, testified. His résumé was accepted into evidence, and the court accepted him as an expert witness in the area of dog behavior and characteristics of handgun ammunition. When asked a series of hypothetical questions, essentially establishing the facts of the incident herein, concerning the behavior of a dog that silently walks in a circle around a person walking another dog on a leash, Mr. Velez offered the opinion that the dog’s behavior was that of a stalking behavior as in a hunt. The circling was to circle his prey to decide what the best angle of attack would be. When hunting, a dog hunts quietly. Once the dog had its jaws on the back/neck of the smaller dog, the larger dog had decided to have the smaller dog as its prey and was not going to release it. Also, based on the scenario of the owner trying to pull the dog off of the smaller dog, the owner did not have proper control of the dog, and was not the “alpha” in his relationship with his dog, and so would not be able to stop the attack. If the dog had not been stopped by being shot, the attack would continue, and if the woman with the leash had tried to stop the attack or take her dog away, it is reasonably certain that the larger dog would have attacked her.
Mr. Velez testified that in his opinion it would be reasonable for a lay person to believe when coming upon the scene that *1086 the woman walking the dog was in jeopardy from the larger dog.
Mr. Velez also testified concerning the 129 grain .38 Special or .38 caliber plus P, Hydra-Shok, jacketed hollow point round. He testified that this ammunition is designed to prevent over penetration of the round, so that when it hits its target, it remains within the target. Based on the scenario described with several people standing around the dog when the pistol was discharged, as long as the ammunition struck its target, it would stay within the body of the animal, and so it would be unlikely that anybody around would be in danger. And, if the weapon was discharged with the pistol vertical to the ground, six inches or less aimed at the dog’s head, the likelihood is it would have stayed within its target and not left its target. Given the scenario described he concluded that Mr. Hessney’s actions were justified under the circumstances.
Guy Anthony Rossi testified as an expert witness, on behalf of the licensee, on the appropriate use of force based upon law and different tactics, including justification and use of force under Penal Law article 35. His résumé was accepted into evidence and the court accepted him as an expert in the use of force, and also with respect to the ammunition used by Mr. Hessney. Given the scenario of several people standing around during the dog attack, Rossi was asked whether or not these people were in jeopardy from the discharge of the type of round discharged from Mr. Hessney’s pistol, assuming the pistol was aimed vertically downward into the head of the attack dog from a distance of six inches from the dog’s head. He opined, within a reasonable degree of certainty, that the people were not in danger. He noted that while working as an Irondequoit police officer, he has had to dispatch many deer that had been hit by cars, using the same ammunition. He testified that he never had a round that over-penetrated the skull. He further opined, given the scenario submitted, that Mr. Hessney was justified in discharging his weapon as he did.*
A pistol license may be revoked and cancelled “for any good cause” (see Matter of Vale v Eidens, 290 AD2d 612, 613 [3d Dept 2002]) at any time if the court determines that a licensee is no longer fit to continue to possess a firearm (Penal Law § 400.00 [1]).
*1087 In light of what transpired the court must look to the underlying facts as it relates to the respondent’s fitness and eligibility to hold a pistol license. And the court is not bound by a standard of proof beyond a reasonable doubt but rather “good cause” based upon “substantial evidence” (Matter of Perlov v Kelly, 21 AD3d 270, 270-271 [1st Dept 2005], citing Matter of Abramowitz v Safir, 293 AD2d 352 [2002] [noting that “our obligation is limited to insuring that respondent (court) met ‘the very minimal evidentiary requirement necessary to uphold its determination,’ ” quoting Matter of Scully v Safir, 282 AD2d 305, 308 (1st Dept 2001)]). This also may include suspension of a pistol permit, and then, following dismissal of a criminal charge, a finding after a hearing that the permit holder lacked the requisite maturity, good judgment and temperament to carry a pistol and thus revoking the same (Matter of Dorsey v Teresi, 26 AD3d 635 [3d Dept 2006]).
In this regard,
“the State has a substantial and legitimate interest and indeed, a grave responsibility, in insuring the safety of the general public from individuals who, by their conduct, have shown themselves to be lacking the essential temperament or character which should be present in one entrusted with a dangerous instrument” (Teresi at 636, quoting Matter of Pelose v County Ct. of Westchester County, 53 AD2d 645, 645 [2d Dept 1976], appeal dismissed 41 NY2d 1008 [1977]).
“In determining whether to revoke a pistol permit pursuant to Penal Law § 400.00 (11), the respondent [court] is vested with broad discretion to resolve factual and credibility issues, and his [its] determination is accorded great weight” (Matter of Pacicca v Allesandro, 19 AD3d 500, 500 [2d Dept 2005]). In Matter of Butts v Dwyer (6 AD3d 1101 [4th Dept 2004]), the Court noted that hearsay evidence can be the basis of an administrative determination. Even dismissal of the underlying criminal charges does not bar any subsequent administrative proceedings to revoke a license based upon the circumstances underlying the criminal charges (Matter of Zalmanov v Bratton, 240 AD2d 173 [1st Dept 1997]).
In Matter of DeAngelo v Burns (124 AD3d 1156 [3d Dept 2015]), the Court upheld the Otsego County Judge’s revocation of petitioner’s pistol permit. There the petitioner had a longstanding feud with his neighbors. “This long-standing discord *1088 apparently extended to a four-year-old child who resided with the neighbors, who purportedly would ‘flip [petitioner] off’ every time he passed by the neighbors’ house” (.DeAngelo at 1156). On the day of the incident, he let the girl’s mother know that her child was “not very ladylike” (id. at 1157). Later the same day, as petitioner approached the neighbors’ house in his truck, the neighbors purportedly blocked the road with their vehicle and a verbal altercation ensued. One of the neighbors displayed a baseball-size rock and petitioner displayed his loaded handgun. Petitioner was charged, and later acquitted, of two counts of menacing in the second degree. The Third Department, in reviewing the record, noted that the judge asked the respondent why he did not simply back up, to which petitioner replied, “I didn’t think of it” (id. at 1158 n 1).
The court has broad discretion to resolve factual and credibility issues in regard to a revocation hearing (Matter of Pacicca v Allesandro, 19 AD3d 500 [2d Dept 2005]).
In Matter of Moreno v Cacace (61 AD3d 977 [2d Dept 2009]),
“there was testimony at the hearing that the petitioner failed to comply with a police officer’s directive to exit his vehicle after the police officer determined the potential presence of a firearm inside the vehicle. The testimony indicated that the petitioner, who was described as ‘irate,’ had to be physically removed from his vehicle by police officers who were attempting to secure their own safety. A cocked and loaded revolver was thereafter recovered from the map pouch on the back of the front passenger seat” (id. at 978).
In Matter of Simmons v New York City Police Dept. License Div. (35 AD3d 748 [2d Dept 2006]), the Court properly revoked the license where the petitioner failed to timely report his arrest to the licensing authority, pleaded guilty to disorderly conduct, an order of protection was issued against him, and he displayed his handgun during a confrontation with a neighbor.
Unlike the licensees in DeAngelo, Cacace and Simmons, the permit holder here did not exhibit a lack of good judgment during the incident in question. Through his actions he demonstrated his good intentions to help a woman who was in danger of attack by a dog that could not be properly restrained by his owner. He demonstrated good judgment in choosing ammunition that would be effective in stopping the attack dog and not cause harm to the people in close proximity to the attack dog. *1089 Before firing his weapon, he first attempted to stop the attack by hitting the attack dog with the pistol. He demonstrated knowledge and skill in the use of his pistol in his placement and discharge of it and by his instructions to the dog’s owner to move back. Further, the licensee has maintained his license without incident since he first obtained it in 1977. The court also notes that the People consented to an adjournment in contemplation of dismissal regarding the underlying criminal charges.
Upon the proof presented, the court concludes that the respondent’s pistol permit should not be revoked, but shall be reinstated and returned to Mr. Hessney, along with the pistols and other items taken pursuant to the court’s order to show cause and that are now in the possession of the Sheriff.
The court will submit a separate order of reinstatement with even date herewith.

 However the court notes that the defense of justification as set forth in article 35 of the Penal Law does not apply herein.