*937 OPINION OF THE COURT
W. Patrick Falvey, J.
The respondent, age 38 (DOB: xx/xx/1977), was issued a license (xx xx-xx) to carry a pistol on March 12, 2008. This court, by order to show cause dated April 14, 2015, ordered the respondent to appear on May 19, 2015 to show cause why an order should not be made revoking her pistol permit and prohibiting her from possessing a firearm, rifle or shotgun as a result of the court’s receipt of a notice purportedly pursuant to Mental Hygiene Law § 9.46 from the New York State Police that the respondent had been “adjudicated as a mental defective or who has been committed to a mental institution” which prohibited her from possessing a firearm, rifle or shotgun pursuant to 18 USC § 922 (g) (4) and Penal Law § 400.00 (1) (i), (j) and (m) and (11) (a)-(c). The respondent’s pistol permit was suspended and her firearms, to include all handguns, rifles and/or shotguns, were placed in the custody of the Yates County Sheriff subject to further order of the court.
The respondent submitted an answer through attorney affirmation denying the allegations affirmed on May 14, 2015. On the return date (May 19, 2015), the respondent appeared with counsel. The matter was adjourned for respondent’s counsel to provide the court additional information concerning mental health treatment she had received. The matter was then put down for a fact-finding hearing, commencing September 3, 2015,* which hearing was continued March 8, 2016. The hearing was completed on March 8, 2016 and respondent was given an opportunity to submit proposed findings of fact and conclusions of law, which were received by the court on April 15, 2016.
Upon the proof presented, the court finds the following essential facts and makes the following conclusions of law:
The Yates County Clerk’s Office received notice by letter from the New York State Police dated April 13, 2015 stating that respondent “has been adjudicated as a mental defective or has been involuntarily committed to a mental institution,” citing 18 USC § 922 (g) (4) (exhibit 5). The court was in turn advised by the clerk of same and the court then issued the subject order to show cause.
The focus of the hearing was thus to determine whether or not the respondent had been adjudicated as a mental defective *938 or had been involuntarily committed to a mental institution and whether or not she should be prohibited from possessing firearms, rifles, shotguns or handguns. In addition, if not prohibited to possess same under the federal statute, whether the court in its discretion had good cause to revoke her license to possess a handgun. (Penal Law § 400.00 [11] [a].)
New York State Police Investigator Chad A. Hunt testified that the State Police had received notification about Ms. McKay from the New York State Office of Mental Health (OMH) (exhibit 5). The notice dated April 11, 2015 via the “eJu-siceNY portal” contains McKay’s identifying information and under “Prohibitory Category Code” states “D — Adjudicated mental defective/Committed to Mental Institution.” McKay’s pistol permit number is stated under “Saved Case Notes” (exhibit 5). Hunt did not know the basis of the notification that was received by the State Police. OMH provided no supporting documents, affidavits or any records to support the alleged determination by OMH that Ms. McKay was a mental defective or that she had been involuntarily committed to a mental hospital.
As a result, James E. Sherman, Technical Lieutenant, Pistol Permit Bureau, New York State Police, wrote a letter dated April 13, 2015 to Yates County Clerk Julie D. Bettes stating that “[t]he Division of State Police has become aware that a person identified as Donna L. McKay . . . has been adjudicated as a mental defective or has been involuntarily committed to a mental institution.” The court notes that Sherman’s notice did not state the basis on which this conclusion was drawn. The letter indicated that the State Police had determined that Ms. McKay was a licensee of a firearm in Yates County (exhibit 5).
On April 7, 2015 McKay voluntarily went to the emergency room (ER) at Soldiers & Sailors Memorial Hospital in Penn Yan, New York, seeking admission to the psychiatric floor of the hospital. She went there because she had been feeling anxious after starting on some cold medicine with codeine she had been prescribed a few days earlier for bronchitis. When she started taking the cough medicine, she felt very hot, was sweating and her blood pressure dropped. She called an ambulance and was administered fluids. She believes that these events triggered a panic attack which caused her to go to the ER on April 7, 2015.
She has been having panic attacks for about 20 years. She usually would talk to her family physician about these attacks. *939 At one point he had suggested to her that during an anxiety attack, she might consider going to the mental health floor of the hospital for a couple of days as a respite. She had this advice in mind when she went to the ER on April 7, 2015 seeking to be admitted to the mental health unit at the hospital, which is a restricted, “secured” area.
Some time before April 7, 2015, McKay had started seeing Karen Brennan, LCSW-R, to help her plan for her 20-year-old autistic son who was transitioning from living with her and her husband and siblings at home to living in a group home. This transition was triggering her anxiety, and so she thought this counseling would be helpful to her. Ms. Brennan had helped her in planning for this transition. After McKay saw Ms. Brennan shortly before April 7, 2015, Ms. Brennan apparently spoke with the hospital ER staff and told them of concerns she had that McKay was having suicidal thoughts. However, McKay had not had such thoughts, and denied telling Ms. Brennan that she had such thoughts. McKay recalls speaking to ER personnel and questioning them whether she could be admitted even though she was not having suicidal thoughts.
Dr. Marino was McKay’s treating physician while she was at the hospital. She met with him the morning of April 8, 2015. In his written evaluation, he concluded that she was anxious, but not suicidal, that her thinking was without psychotic symptoms, past or present, and there was no evidence of any formal thought disorder. He found her insight to be good (exhibit 1).
The “Violence Risk Assessment” completed at the hospital showed that she had a very low risk of violence (exhibit 3).
Sometime before McKay’s discharge, Dr. Marino made an online report in compliance with the New York Safe Act (Mental Hygiene Law § 9.46 [b]) that she had entered the mental health unit. It was this report that triggered the Safe Act report that the State Police eventually sent to the court and to the Yates County Clerk. Dr. Marino testified that “every person that comes into the Mental Health Unit is registered, and I sign that they’ve come into the Hospital” (tr at 32). He testified that the document that he checks off does not indicate whether or not the patient has been determined to have been involuntarily admitted or that she has a mental defect (tr at 32-33). Dr. Marino did not recall the exact wording of the form, but he said there was not an option on the form that he could check
“whether they were involuntarily or voluntarily, or committed, or deficient, or anything else, it’s just a *940 generated — computer generated form that the patient was in, the day and time that I saw them. But it does not give me — it does not allow for anything other than that they were admitted” (tr at 36).
Dr. Marino testified further,
“I am signing it every day, every patient that comes into the Hospital, and it’s a generic form that does not call for their diagnosis, does not call for any differentiation, whether they’re in Hospital voluntarily, or involuntary, just that they came into the Hospital, the date, and I signed that” (tr at 37).
This form as it related to respondent was not among the hospital records subpoenaed for the hearing.
Dr. Marino on April 22, 2015 wrote this court to state that McKay’s admission was voluntary. He opined in the letter that it would be proper to return her firearms to her (exhibit 4). He testified that McKay did not have a depression diagnosis, but a panic disorder.
Here, McKay was admitted voluntarily, not involuntarily. She had not been adjudicated an incompetent by any court. Here, based on the proof presented, the State Police notices to the court and the County Clerk erroneously stated that McKay had been adjudicated as a mental defective or had been involuntarily committed to a mental institution.
The statute referred to in the State Police notice, to wit: 18 USC § 922 (g) (4), provides:
“It shall be unlawful for any person . . . who has been adjudicated as a mental defective or who has been committed to a mental institution ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.”
Case law suggests that the term “committed” stated in 18 USC § 922 (g) (4) means involuntarily committed. (See Matter of Robert T, 26 Misc 3d 292 [Dutchess County Ct 2009].) Additionally, 27 CFR 478.11 defines “[c]ommitted to a mental institution” as
“[a] formal commitment of a person to a mental institution by a court, board, commission, or other *941 lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution” (emphasis added; see also Phelps v Bosco, 2015 WL 1399051, 2015 US Dist LEXIS 38270 [ND NY, Mar. 26, 2015, No. 1:13-CV-1510 (GTS/CFH)]).
The Phelps case was a 42 USC § 1983 civil rights action filed by the plaintiff against state employees and agencies and federal employees and agencies who created records that were picked up in the National Instant Criminal Background Check System when he tried to purchase a long gun for hunting, many years after a hospitalization for mental health issues, which plaintiff claimed was not an involuntary commitment. There, the plaintiff had been hospitalized for five days after he began a hunger strike in county jail following his arrest for kicking the sheriff. He argued that the admission was for observation only, under Mental Hygiene Law § 9.37, not a commitment. The court cited United States v Waters (23 F3d 29, 32 [2d Cir 1994]) regarding what constituted “commitment” for purposes of 18 USC § 922 (g) (4). Waters concluded that an involuntary admission to a mental hospital on certificate of two doctors (Mental Hygiene Law § 9.27) constituted “commitment” for purposes of 18 USC § 922 (g) (4).
The court concludes that based upon the proof presented McKay’s time in the hospital was not a commitment within the meaning of 18 USC § 922 (g) (4). Further, she had not been adjudicated a mental incompetent. Therefore, she does not fall under the prohibition of 18 USC § 922 (g) (4) from obtaining or possessing firearms or ammunition. Nor was she taken into custody by a police or peace officer and placed in the hospital secure mental health unit pursuant to Mental Hygiene Law § 9.41.
The court must also determine whether based on the record before it there is cause to exercise its discretion to revoke her pistol permit under Penal Law § 400.00 (11) (a).
“In determining whether to revoke a pistol permit pursuant to Penal Law § 400.00 (11), the respondent [court] is vested with broad discretion to resolve factual and credibility issues, and [its] determination is accorded great weight.” (Matter of *942 Pacicca v Allesandro, 19 AD3d 500, 500 [2d Dept 2005].) In Matter of Butts v Dwyer (6 AD3d 1101 [4th Dept 2004]), the Court noted that hearsay evidence can be the basis of an administrative determination.
A pistol license may be revoked and cancelled “for any good cause” (see Matter of Vale v Eidens, 290 AD2d 612, 613 [3d Dept 2002]) at any time if the court determines that a licensee is no longer eligible or fit to continue to possess a firearm. (Penal Law § 400.00 [1] [n].) This could include an inability to possess a pistol license due to mental illness (Penal Law § 400.00 [1] [i]), having been involuntarily committed to a mental health facility (Penal Law § 400.00 [1] [j]) or having a guardian appointed for her (Penal Law § 400.00 [1] [m]).
When exercising its discretion, the court must look to the underlying facts in the record before it and as they relate to the respondent’s fitness and eligibility to hold a pistol license. And the court is not bound by a standard of proof of beyond a reasonable doubt but rather “good cause” based upon “substantial evidence.” (Matter of Perlov v Kelly, 21 AD3d 270, 270-271 [1st Dept 2005] [noting that “our obligation is limited to insuring that respondent (court) met ‘the very minimal evidentiary requirement necessary to uphold its determination’ ” (quoting Matter of Scully v Safir, 282 AD2d 305, 308 [1st Dept 2001])], citing Matter of Abramowitz v Safir, 293 AD2d 352 [1st Dept 2002].)
In this regard, “ ‘[t]he State has a substantial and legitimate interest and indeed, a grave responsibility, in insuring the safety of the general public from individuals who, by their conduct, have shown themselves to be lacking the essential temperament or character which should be present in one entrusted with a dangerous instrument.’ ” (Matter of Dorsey v Teresi, 26 AD3d 635, 636 [2006], quoting Matter of Pelose v County Ct. of Westchester County, 53 AD2d 645, 645 [2d Dept 1976], appeal dismissed 41 NY2d 1008 [1977].)
The court concludes that on the record before it when viewed in the totality of the circumstances, no good cause exists for the revocation of the respondent’s pistol permit and it therefore shall be reinstated and returned to her by the Pistol Permit Clerk and any firearms, rifles or shotguns and other items taken pursuant to the court’s order to show cause and that are now in the possession of the Yates County Sheriff under receipt dated April 15, 2015 bearing case number 2015-02308 shall be returned upon presentment of a copy of the order of reinstatement.
*943 McKay has held, her permit without incident since 2008, until the permit was seized herein. She presented herself at the hearing as a forthright, conscientious, thoughtful person, and the medical proof presented, including the Soldiers & Sailors Memorial Hospital medical records (exhibit 7) subpoenaed for the hearing, does not give the court reason to be concerned that she lacks the judgment or temperament to possess a firearm as she has not suffered mental illness (Penal Law § 400.00 [1] [i]) or been involuntarily committed to a facility under the jurisdiction of an office of the Department of Mental Hygiene (Penal Law § 400.00 [1] |j]) or had a guardian appointed for her (Penal Law § 400.00 [1] [m]; see Penal Law § 400.00 [1] [i], [j], [m], [n]).
The court will submit a separate order of reinstatement with even date herewith.

 Although the transcript and calendar for the hearing states Thursday, September 1, 2015, the date was Thursday, September 3, 2015.